2005-NMCA-139

124 P.3d 1164

**GILA RESOURCES INFORMATION PROJECT and New Mexico Environment Department, Appellants,**

v.

**NEW MEXICO WATER QUALITY CONTROL COMMISSION and Chino Mines Company, Appellees.**

In the Matter of the Appeal Petition on Chino Mines Company's Proposed Ground Water Supplemental Discharge Permit for Closure—DP–1340.

No. 24,478.

Court of Appeals of New Mexico.

June 15, 2005.

Certiorari Denied, No. 29,400, Sept. 27, 2005.

Roderick Ventura, Douglas Meiklejohn, Eric Jantz, N.M. Environmental Law Center, Santa Fe, NM, for Appellant Gila Resources Information Project.

Tannis L. Fox, Special Assistant Attorney General, Santa Fe, NM, for Appellant N.M. Environment Department.

Patricia A. Madrid, Attorney General, Zachary Shandler, Assistant Attorney General, Santa Fe, NM, for Appellee N.M. Water Quality Control Commission.

John J. Kelly, Stuart R. Butzier, Alex C. Walker, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, NM, Dalva L. Moel-lenberg, Gallagher & Kennedy, P.A., Phoenix, AZ, for Appellee Chino Mines Company.

## OPINION

SUTIN, Judge.

{1} A ground water discharge permit was issued to Chino Mines Company by the New Mexico Department of Environment. Gila Resources Information Project, a community organization that engages in public outreach, education, and advocacy, filed an administrative appeal with the New Mexico Water Quality Control Commission. The Department joined that appeal. This appeal results from the Commission's dismissal of the administrative appeal on procedural grounds. Because we hold that the Commission's dismissal was arbitrary, an abuse of discretion, and not supported by substantial evidence, we reverse and remand.

## REGULATORY SETTING

{2} The New Mexico Water Quality Control Commission (the Commission) was created under the Water Quality Act, NMSA 1978, §§ 74-6-1 to -17 (1967, as amended through 2003). § 74-6-3(A). Among other duties, the Commission is required to adopt a comprehensive water quality management program, adopt water quality standards for surface and ground waters, adopt regulations to prevent or abate water pollution, and assign responsibility for administering its regulations to constituent agencies. § 74-6-4(B) to (E). The Commission is authorized to adopt regulations requiring persons to obtain from a constituent agency a permit for the discharge of any water contaminant. § 74-6-5(A).

{3} The New Mexico Department of Environment (the Department) was created under the Department of Environment Act, NMSA 1978, §§ 9-7A-1 to -12 (1991). § 9-7A-4. The administrative head of the Department is the secretary of environment (the Secretary). §§ 9-7A-2, -5. The Secretary sits as one of the Commission's twelve members. § 74-6-3(A)(1). Under the Water Quality Act, the Department is a "constituent agency." § 74-6-2(K)(1). The Department is required to provide staff support to the

Commission. NMSA 1978, § 9–7A–13 (1991). Further, "[a]ll powers, duties and responsibilities of the [Commission] ... are hereby explicitly exempted from the authority of the [S]ecretary[.]" *Id.*

{4} The Water Quality Act sets out general requirements relating to a constituent agency's denial of an applicant's request for a permit. § 74–6–5(E). In addition, the Commission is required to adopt regulations developing procedures that ensure that the public receives notice of applications for permit issuance and modification and that ensure a public hearing is held that gives a reasonable opportunity for all interested persons to be heard. § 74–6–5(F).

{5} The Commission adopted regulations governing the permitting and setting out ground water standards. *See* 20.6.2 NMAC (2004). These regulations cover, among other things, the requirements for and issuance of discharge permits by the Secretary, and also cover public hearings and appeals relating to the issuance of permits by the Secretary. *See* 20.6.2.3104, .3106, .3110, .3112 NMAC. Commission regulations also cover the issuance by the Secretary of closure permits that require those who discharge water contaminants to protect ground water when they close their facilities. *See* 20.6.2.3107(A)(11) NMAC.

{6} Any party who participates in a permitting proceeding before the Department may appeal the Department's decision by filing a petition for review before the Commission. § 74–6–5(N). Gila Resources Information Project (GRIP) participated in the permitting proceeding in this case and therefore had standing to appeal the Department's permitting decision to the Commission. The Commission regulations contain adjudicatory rules that set forth specific requirements for filing petitions for review and for conducting a hearing on the petition. *See generally* 20.1.3 NMAC (2001). More particularly, 20.1.3.2(A)(1) NMAC governs "Appeal Hearings," which includes, among other proceedings, appeals from permitting actions under Section 74–6–5(N). 20.1.3.2(A)(1), (B)(1) NMAC. The regulations refer to the "petition

for review" described in Section 74–6–5(N) as an "Appeal Petition." 20.1.3.7(A)(12)(b) NMAC. An appeal petition can be an "informal Appeal Petition," or a "formal Appeal Petition." 20.1.3.200(A)(3)(c) NMAC. The regulations define a proceeding before the Commission initiated by an appeal petition as a "Petition Hearing." 20.1.3.7(A)(12) NMAC. Section 20.1.3.200 governs the "Appeal Hearing" which is initiated by an "Appeal Petition." 20.1.3.200(A) NMAC.[1] We use the nomenclature in the regulations throughout this opinion. Thus, GRIP filed an "appeal petition" and obtained an "appeal hearing" before the Commission. GRIP first filed an "informal appeal petition" and then filed a "formal appeal petition."

## BACKGROUND

{7} Appellee Chino Mines Company (Chino) operates an open pit copper mine in southwestern New Mexico. The mine discharges contaminants that move into ground water. Chino was therefore required to obtain, and did obtain, discharge permits related to its mine operation. In anticipation of Chino closing its mines, the Department issued a draft closure permit that set forth conditions relating to protecting ground water at the site upon its closure. In August 2001, the Department held a public hearing on the draft permit. GRIP appeared as a party at the hearing.

{8} After the hearing, Chino and the Department engaged in settlement discussions to attempt to narrow their different positions. These discussions resulted in a draft stipulated permit containing general terms and conditions of a closure permit. In February 2002, the Department held a public hearing on the draft stipulated permit. The Department, Chino, GRIP, and another organization participated as parties. GRIP objected to certain provisions of the draft stipulated permit. In January 2003, the hearing officer issued a report and findings of fact and conclusions of law. The hearing officer generally affirmed the draft stipulated permit and specifically affirmed provisions that GRIP found objectionable. On February 24,

---

1. It is unclear why the regulations use "appeal hearing" in various provisions, but define the hearing as a "Petition Hearing." *See* 20.1.3.7(A)(12) NMAC.

2003, through the Chief of its Ground Water Quality Bureau, the Department issued a final closure permit to Chino, designated Supplemental Discharge Permit for Closure DP–1340. On the same day, GRIP began the Commission appeal process based on the hearing officer's adverse determination.

{9} Under the Commission's procedural regulations governing the appeal process, the petitioner must file the appeal petition within thirty days "from the date notice is given of the permitting action." 20.1.3.200(A)(1)(a) NMAC. While this appeal petition initiates the appeal hearing, see 20.1.3.200(A) NMAC, if the petitioner "wishes to delay a hearing in order to negotiate with the Department, the [p]etitioner may file an informal [a]ppeal [p]etition" within the thirty-day period. 20.1.3.200(A)(3) NMAC. If an informal appeal petition is filed, the petitioner must waive the right to hearing within ninety days. 20.1.3.200(A)(3)(a) NMAC. Further, the informal appeal petition must "be filed with the Commission and a copy served on the Department." 20.1.3.200(A)(1)(f) NMAC; 20.1.3.200(A)(3)(a) NMAC.

{10} If the petitioner and the Department are unable to resolve an informal appeal petition within ninety days, the petitioner must file a formal appeal petition or, alternatively, "[t]he ninety day period may be extended by a stipulated or unopposed motion." 20.1.3.200(A)(3)(c) NMAC. If this extension is obtained, but the informal petition is not resolved, the petitioner must then file a formal appeal petition. The appeal is subject to dismissal for failure to file a timely formal petition. 20.1.3.200(A)(3)(d) NMAC.

{11} GRIP initiated the appeal hearing process through an informal appeal petition. The Commission hearing clerk issued a notice of docketing of the informal appeal petition and served the Department, GRIP, and Chino. GRIP and the Department held settlement negotiations. GRIP also engaged in separate settlement negotiations with Chino. All negotiations proved unsuccessful. On May 23, 2003, GRIP, noting that the deadline for filing a formal appeal was May 27, 2003, filed a stipulated motion with the Commission requesting an additional ninety-day extension to negotiate further with the Depart-

ment and to file a formal appeal petition if the negotiations remained unsuccessful. The Commission extended the time to file a formal appeal petition until August 25, 2003, based on the stipulated motion. GRIP attempted to further negotiate with the Department but had no success. On August 22, 2003, GRIP filed a formal appeal petition with the Commission and served the petition on the Department and Chino.

{12} GRIP's formal appeal petition raised several objections to DP–1340. In September 2003, Chino filed a motion to dismiss GRIP's formal appeal petition. Chino's basic attack was that the Commission regulations required GRIP to obtain Chino's concurrence in the stipulated motion for a ninety-day extension as a condition precedent to issuance of an order granting the extension. Chino argued that GRIP's failure to obtain Chino's concurrence rendered the Commission's extension order invalid. It further argued that because the order was invalid, GRIP's formal appeal petition was untimely and subject to dismissal under 20.1.3.200(A)(3)(d) NMAC, which provides for dismissal of untimely formal appeal petitions. GRIP responded.

{13} The Commission heard argument on Chino's motion to dismiss in November 2003. Both GRIP and the Department argued against dismissal. The Commission voted six to five to dismiss GRIP's formal appeal petition. In its order granting Chino's motion to dismiss, the Commission concluded that under its regulations: (1) a "party" included a permittee, and "a permittee must be part of motion practice under the appeal hearing rules"; (2) failure to include Chino in the May 2003 motion practice was prejudicial to Chino; and (3) "dismissing this appeal was not prejudicial to GRIP because the conditions that it appealed can be revisited within permitting processes." GRIP appealed from that order. See § 74–6–7(A) (authorizing appeal directly to the Court of Appeals). The Department intervened in the appeal as an appellant.

{14} On appeal, GRIP asserts that the Commission's determination is erroneous, in that: (1) the Commission's findings are not supported by substantial evidence; (2) the

Commission erred as a matter of law in finding that the dismissal was not prejudicial to GRIP; (3) GRIP was unfairly penalized for following ambiguous Commission regulations; and (4) the Commission's dismissal is based on an incorrect interpretation of, and conflicts with, the intent of the Water Quality Act. The Department asserts on appeal that the Commission's determination is erroneous because: (1) the Commission's actions permitting an extension and then dismissing the formal petition were arbitrary; (2) the Commission erred in its interpretation of its regulations; and (3) a commissioner's vote in favor of affirming DP–1340 must be disqualified because it was based on matters outside of the record, rendering the Commission's determination invalid.

## DISCUSSION

### A. Standard of Review

{15} According to the Water Quality Act, this Court can set aside the Commission's dismissal order only if we determine the Commission's decision is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." § 74–6–7(B). We engage in whole record review. *See Atlixco Coalition v. Maggiore,* 1998–NMCA–134, ¶ 23, 125 N.M. 786, 965 P.2d 370.

{16} "A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n,* 2003–NMSC–005, ¶ 17, 133 N.M. 97, 61 P.3d 806. We will generally defer to the Commission's reasonable interpretation of its own ambiguous regulations. *See id.*

### B. The Commission's Interpretation of Its Regulations

{17} A Commission regulation generally relating to motions requires that, with respect to "unopposed motions," the motion must "state that the concurrence of all other parties was obtained." 20.1.3.113(B) NMAC. The same regulation states that the moving party must submit a proposed order "ap-proved by all parties." *Id.* Another Commission rule provides that "[e]xcept as otherwise provided, a party filing documents shall serve copies thereof upon all other parties." 20.1.3.111(B)(2) NMAC. The term "document" means, among other material, a "motion." 20.1.3.111(A) NMAC. Another regulation defines "party" as "the Petitioner, the Applicant if different from the Petitioner, the Respondent, the Department, or any person who is permitted to intervene in the particular hearing pursuant to [Rule] 1–024 [NMRA]." 20.1.3.7(A)(10) NMAC. In the present case, GRIP was the "Petitioner" and Chino was the "Applicant."

{18} GRIP's stipulated motion requesting the Commission to grant an extension of time to file a formal appeal petition was filed on May 23, 2003, which was the last business day prior to the expiration of the first ninety-day period. The deadline to file a formal appeal can be extended by the Commission based on a "stipulated or unopposed motion." 20.1.3.200(A)(3)(c) NMAC. In its stipulated motion, GRIP stated in one place that "[the Department] stipulates to this motion," and, in another place, after noting the deadline for filing a formal appeal petition, stated:

> However, the Rules allow for the ninety day period for filing a formal appeal to be extended "by a stipulated or unopposed motion." **[The Department] has stipulated to this motion through its counsel.** Since the nature of the informal appeal is a negotiation with the [Department] (20.1.3.200[ (A)](3) NMAC), the only parties to this action are GRIP and [the Department].

GRIP submitted the stipulated motion to the Department's attorney before it was filed and GRIP received the Department's attorney's approval. GRIP submitted the stipulated motion with a proposed order to the Commission's hearing clerk, who indicated that the order would be signed. The order, dated May 27, 2003, was signed by the Secretary, who was the Commission's chairman, and who was acting on behalf of the Commission. The order specifically noted that the Department had stipulated to the motion and the order granted an extension until August 25, 2003. GRIP did not serve Chino with the

stipulated motion or the order granting that motion, nor did GRIP attempt to obtain Chino's concurrence in the extension requested in the stipulated motion or granted in the order. The Department and GRIP failed to reach a settlement. GRIP filed a formal appeal petition on August 22, 2003, and served that petition on Chino.

{19} After being served with the formal appeal petition, Chino filed a motion to dismiss GRIP's formal appeal. The Commission heard Chino's motion. Chino argued to the Commission that it was a party, that its stipulation or lack of opposition was required to grant the motion for an extension, and that GRIP was required to serve the motion and order on Chino. The Commission granted Chino's motion, holding that "party," in 20.1.3.7(A)(10) NMAC, included Chino and that 20.1.3.113 NMAC required "all parties to be a part of motion practice." We interpret this last statement to mean that the Commission interpreted 20.1.3.113 NMAC to require Chino's lack of opposition or stipulation to the motion for an extension of time to file the formal appeal as well as service of the motion and order on Chino.

{20} On appeal, Chino and the Commission assert that "party" and "parties," as those terms appear in the Commission regulations, include Chino, the permit applicant. They argue that GRIP was required to obtain Chino's concurrence in the stipulated motion and in the order granting the motion. Thus, according to Chino and the Commission, the Commission's interpretation of the regulation that requires GRIP to include Chino in any motion practice was appropriate. GRIP and the Department take another tack.

{21} GRIP asserts that the Commission regulations are unclear, bolstering this assertion by referring to the fact that a member of the Commission thought they were unclear. GRIP refers to the informal appeal petition process specifically set forth in 20.1.3.200(A)(3) NMAC and shows that nowhere in that regulation is there a mention of "party" or "parties." Nor, GRIP indicates, does it mention "applicant" or "permittee." The language of the regulation, and the absence of these terms, GRIP contends, indicates that the only participants in the infor-

mal appeal petition process are the petitioner and the Department. In contrast, GRIP points out, the formal appeal petition process, set out in 20.1.3.200(A) NMAC, references not only the petitioner and the Department, but also requires the Department to serve "only the index to the record on other parties," states that "[t]he parties may stipulate" in regard to what portions of the record are to be filed, and requires the Department to deliver to the hearing clerk "a list of all persons ... who participated in a public hearing on the permitting action[.]" 20.1.3.200(A)(2)(a), (b) NMAC. Thus, according to GRIP, the formal process, but not the informal process, includes the applicant and any other party as defined in 20.1.3.7(A)(10) NMAC. Further, GRIP states that there exist no separate regulations that require all "interested parties" or all "parties" to become involved in negotiations in the informal appeal petition process. Therefore, GRIP concludes, the regulations for informal appeal petitions limit the process to the petitioner and the Department and "GRIP should not be penalized for following the [Commission's] rules and procedures to the best of its ability."

{22} The Department, too, takes the position that the Commission regulations are "anything but clear." Like GRIP, the Department shows that the specific regulations governing informal appeal petitions permit a petitioner to delay a hearing in order to negotiate with the Department, and that nothing in the regulations requires settlement negotiations to include the applicant where the applicant is not the petitioner. The process, according to the Department, is to allow the petitioner to negotiate with the Department. Further, no provision exists in the informal appeal petition process specifically requiring the permit applicant or any "parties" to concur in the stipulated motion to extend the negotiation period. Thus, the Department concludes, the regulations governing the informal appeal petition process do not include the permit applicant, and the regulations contemplate that the only parties to the negotiations are the petitioner and the Department. Based on these observations, the Department argues that requiring the participation of the permit applicant "based

entirely on the fact that the word 'motion' appears in the provision and then hobbling together an argument requiring the participation of an entity otherwise not mentioned in the provision—is an overly strained interpretation of the Commission's rules."

{23} Here, we have two independent regulatory bodies at loggerheads as to the proper interpretation and enforcement of the Commission regulations. The Commission, having issued the pertinent regulations, and being required to entertain appeals, is placed in a position of having to interpret, as well as to enforce, its own procedural regulations. The Department, which is required to engage in the permitting process, including negotiations in the appeal process, is also placed in a position of having to interpret the Commission's permit and procedural regulations. To somewhat complicate the roles and authority of the interested government regulatory bodies, the New Mexico Mining Act, NMSA 1978, §§ 69–36–1 to –20 (1993, as amended through 2001), also governs a mine's closeout process. *See* 19.10.5.506(J)(5) NMAC (2001) (stating that before a mining closeout plan may be approved by the Director of the Mining and Materials Division (the Division), the Division must receive "a written determination ... from the Secretary ... stating that the application has demonstrated that the activities to be permitted or authorized will be expected to achieve compliance with all applicable air, water quality, and other environmental standards if carried out as described in the closeout plan"). GRIP points out that it is the determination of the Secretary, as discussed in 19.10.5.506(J)(5) NMAC of the Division regulations, that GRIP appealed to the Commission.

{24} GRIP and the Department make reasonable arguments given the ambiguity of the regulations. We by no means shut out the Department's suggestions as to the manner in which the law and regulations should be interpreted and applied. However, given that the Legislature vested the power to promulgate regulations and to administer them in the Commission, we will defer to the Commission's interpretation of those regulations as long as it is reasonable. *See Atlixco Coalition*, 1998–NMCA–134, ¶ 30, 125 N.M.

786, 965 P.2d 370 ("[I]n resolving ambiguities in the ... regulations which an agency is charged with administering, the Court generally will defer to the agency's interpretation if it implicates agency expertise."); *Morningstar Water Users Ass'n. v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995) (stating that we accord some deference to an agency's interpretation of the statute that governs the agency); *see also Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005–NMSC–006, ¶ 16, 137 N.M. 161, 108 P.3d 1019 (stating "[t]here is a sound basis to afford substantial deference to an agency's ruling on [an order denying discovery] and reverse the ruling only for an abuse of discretion that is arbitrary or capricious or contrary to law"). We believe the Commission's interpretation is reasonable. *See id.* ¶ 19 ("Our inquiry is whether the decision was reasonable.").

{25} The meaning of the word "party" as defined in regulation 20.1.3.7(A)(10) NMAC includes the permit applicant "if different from the Petitioner." Although the regulation specific to informal appeals does not expressly discuss the permit applicant, the Commission's application of the provision defining "party" to the specific regulations governing informal appeals was reasonable. We see the structure of the Commission's adjudicatory regulations as not significantly different than that of the Rules of Civil Procedure governing actions in the district courts. The Rules of Civil Procedure for the district courts govern specific proceedings such as, summary judgment (Rule 1–056 NMRA), trial (Rules 1–038 to –052 NMRA), writs, injunctions, and receivers (Rules 1–064 to –066 NMRA), supplementary proceedings (Rule 1–069 NMRA), and Human Rights Commission and Unemployment Compensation appeals (Rules 1–076, 1–077 NMRA). The rules also generally govern motions, *see* Rules 1–007, –007.1 NMRA, and service of motions, *see* Rule 1–005(A) NMRA. We know of no rule or practice in the district courts that disassociates the general requirements relating to motions from the rules relating to specific proceedings. We see no reason to treat the Commission regulations differently. Thus, we see no reason to disassociate the Commission's general regulations relating to

motions from those relating to formal and informal appeal petitions and appeal hearing proceedings.

{26} We hold that the Commission's requirement that GRIP must and should have obtained Chino's concurrence in the stipulated motion and approval of the order granting the stipulated motion was not erroneous. However, as we discuss later in this opinion, under the circumstances at the time, it was reasonable for the stipulated extension to have been granted.

## C. The Commission's Dismissal of GRIP's Formal Appeal Petition

{27} GRIP and the Department attack the Commission's dismissal of its formal appeal petition on several different grounds. Combined, the grounds are: (1) the finding of prejudice to Chino was not supported by substantial evidence; (2) the finding that GRIP was not prejudiced was erroneous as a matter of law; (3) it was unfair to penalize GRIP by dismissing its appeal petition where GRIP followed ambiguous regulations to the best of its ability; (4) the dismissal conflicts with the intent of the Water Quality Act to allow interested parties to initiate and control permit appeals, and dismissal constitutes a clearly incorrect administrative interpretation of the Water Quality Act; (5) the vote for dismissal of one commissioner was arbitrary and an abuse of discretion, and his improper vote must be disqualified, requiring the dismissal to be overturned; (6) the sanction of dismissal was arbitrary because the justification for that sanction could only have been extreme or wilful conduct, and GRIP's conduct was neither extreme nor wilful; and (7) it was arbitrary, fundamentally unfair, and prejudicial to GRIP for the Commission to grant the stipulated motion knowing that only the Department stipulated to it and to then dismiss GRIP's formal appeal for failing to involve Chino in the extension process. For the reasons that follow, we agree that the dismissal was arbitrary, an abuse of discretion, and not supported by substantial evidence.

{28} Preliminarily, our view is that before the Commission interpreted its regulations in this case, they were, as GRIP and the Department contend, unclear. It is not clear whether the general regulations pertaining to motions and service of documents were intended, when adopted, to apply to informal appeal petition proceedings. The lack of clarity as to intent and application of the regulations are highlighted not only by the stark disagreement between the Department and the Commission, and between Chino and GRIP, but also by the views expressed by the Commission's attorney and a commissioner during the proceedings relating to the dismissal of the formal appeal petition.

{29} Further, we think the following circumstances are noteworthy. During the extension request process, the Department agreed to the stipulated motion and the order with neither the motion nor the order reflecting Chino's concurrence. The Secretary appears to have interpreted the regulations to permit extended negotiations between GRIP and the Department without requiring concurrence from Chino in the motion or the order, and without requiring service of the motion on Chino. The Secretary as chair of the Commission, and acting on its behalf, signed the order granting the extension. The Commission's hearing clerk did not serve the motion or order on Chino. GRIP's reading of the regulations was not unreasonable given their lack of clarity. GRIP's completing the extension process without Chino's concurrence was reasonable given the Department's and the Commission's approvals of the stipulated motion, and the Secretary's and the Commission's approval of the extension. It is also noteworthy that Chino requested the Commission to rescind the order, but the Commission did not do so. Rather, the Commission chose to interpret its regulations in a manner that in effect said that the order was improvidently granted because GRIP should have involved Chino in the request for an extension.

### 1. The Prejudice Issues

{30} Chino argued before the Commission that, as a result of the order granting another ninety-day extension to file a formal appeal petition, there was an unjustified delay of the hearing process that prejudiced Chino's right to a timely hearing on the

appeal of its permit. Chino also argued that it expended substantial resources in complying with the permit requirements in reliance on finality of the permit. Further, Chino argued that the Department's permit issuance was required before Chino could obtain approval of a closeout plan by the Division, an approval that was required within six months of DP–1340 unless extended by the Director of the Division. Chino expressed concern that "GRIP's unjustifiable delay in filing a formal appeal petition could affect Chino's compliance with the Mining Act." GRIP responded, arguing that there was no undue prejudice to Chino shown, and that it was GRIP that would be prejudiced by a dismissal.

{31} On appeal, GRIP argues that the denial of its right under Section 74–6–5(N) of the Water Quality Act and the regulations to a timely hearing was prejudicial. GRIP further argues that the Water Quality Act does not provide any means for it to participate further in the permitting process or to address its concerns with the discharge permit after a dismissal of an appeal. Answering Chino's argument to the Commission that GRIP could pursue a remedy under the Mining Act, GRIP argues that the Mining Act does not provide for an appeal of an Environment Department decision, including a discharge permit issued under the Water Quality Act. GRIP also argues that even were there a hearing available under the Mining Act, the persons entertaining the issues would not consist of the same water quality experts or level of expertise in water quality issues as the Commission. Answering a commissioner's point that GRIP could address the issues again in five years when the discharge permit was up for renewal, GRIP repeats its argument that it has been prejudiced by the denial of its right to a timely hearing and argues further that it is unprotected if Chino were to begin cessation of operations before five years passed. The Department contends that the dismissal resulted in substantial prejudice to GRIP for much the same reasons. With respect to prejudice to Chino, the Department contends that Chino has misframed the inquiry and asserts that, as framed, there exists no evidence to support the facts Chino argued as to its expenditure of resources, and that, in fact, the record reflects that Chino did not expend resources as it contends.

{32} We agree with GRIP and the Department that there is no evidence in the record supporting the Commission's finding that Chino was prejudiced by the grant of the extension. While Chino now argues that there are due process and permitting uncertainty issues that constitute bases on which the Commission might have thought Chino was prejudiced, none are of record below. We are not able to discern the circumstances underlying the Commission's determination of prejudice. Further, the grant of an extension by the Commission and later dismissal of the formal appeal petition appears to have been potentially prejudicial to GRIP. Had the Department's attorney indicated that the Department would not stipulate to an order granting the extension, or had the Secretary, acting for the Commission, refused to sign the order on the date it was signed, GRIP arguably would have been able to timely proceed with a formal appeal petition that would not have been procedurally attackable. Further, we are unable to discern how the Commission came to the conclusion that·the conditions GRIP appealed could be revisited within the permitting process.

{33} GRIP appealed directly to this Court pursuant to Section 74–6–7(A). Neither this section nor any other section in the Water Quality Act explicitly states that the Commission must provide a written factual and legal basis for its decision. See VanderVossen v. City of Espanola, 2001–NMCA–016, ¶ 26, 130 N.M. 287, 24 P.3d 319 (requiring a city council to provide a written factual and legal basis for its decision as required under NMSA 1978, § 39–3–1.1(B)(1) (1999)); Atlixco Coalition, 1998–NMCA–134, ¶¶ 17, 19, 125 N.M. 786, 965 P.2d 370 (requiring a statement of reasons for adjudicative action taken by the Secretary, as required under NMSA 1978, § 74–9–29(B)(1) (1990)). However, Section 74–6–7(A) explicitly gives GRIP a right to appellate review by this Court. We must be able to provide effective, meaningful judicial review. We are unable to do so if an administrative agency's adjudicatory decision of dismissal with prejudice is founded on

unexplained conclusions with inadequate support in the record. *See Fasken v. Oil Conservation Comm'n,* 87 N.M. 292, 294, 532 P.2d 588, 590 (1975) (determining disclosure by agency of its reasoning in reaching its ultimate findings to be utterly lacking and stating: "We do not have the vaguest notion of how the [agency] reasoned its way to its ultimate findings. We have only the theories stated in argument of counsel which we are ill-equipped to gauge."); *Atlixco Coalition,* 1998–NMCA–134, ¶ 17, 125 N.M. 786, 965 P.2d 370 (stating that "one of the purposes of requiring a statement of reasons is to allow for meaningful judicial review"); *Akel v. N.M. Human Servs. Dep't,* 106 N.M. 741, 743, 749 P.2d 1120, 1122 (Ct.App.1987) (stating that for adequate appellate review "the hearing officer's decision [must] adequately reflect the basis for [the] determination and the reasoning used in arriving at such determination").

{34} Further, because our review is of an administrative, rather than a judicial, decision, we will take care not to inappropriately tread on the executive branch's functions by looking for a factual or legal basis to support an agency's decision that is not stated by the agency as the underlying reason for its decision. *See Atlixco Coalition,* 1998–NMCA–134, ¶¶ 20–21, 125 N.M. 786, 965 P.2d 370 (stating that where the Legislature directs an agency to give reasons for its action, the appellate court "may not supply a reasoned basis for the agency's action that the agency itself has not given" (internal quotation marks and citation omitted)).

{35} In the present case, the Commission sought to sanction what it determined to be a violation by GRIP of procedural regulations relating to motion practice. In doing so, the Commission invoked standards of prejudice and lack of prejudice resulting from the violation. The problem was not in the use of these standards, but in the Commission's conclusions. All the Commission provided was an unexplained conclusion of prejudice to Chino with no evidentiary support in the record and a conclusion of lack of prejudice to GRIP based on an unexplained determination that "the conditions that [GRIP] appealed can be revisited within per-

mitting processes." This Court is hardly able to effectively and meaningfully review whether the Commission's ultimate decision to dismiss was erroneous under the Section 74–6–7(B) standard of review.

{36} The issues of prejudice and lack of prejudice were critical to the Commission's dismissal. But we will not simply defer to the Commission when the exercise of its adjudicatory power results in a dismissal with prejudice based on conclusions that lack support in the record and are not adequately supported by expressed factual and legal reasons.

{37} The Legislature has recognized that administrative agencies must provide written factual and legal bases for their decisions. *See, e.g.,* § 39–3–1.1(B)(2); NMSA 1978, § 74–9–27(B)(1) (1990); § 74–9–29(B)(1). This recognition undoubtedly stems from not only the concepts of fairness and transparency in administrative proceedings, but also from the difficulty in our conducting effective and meaningful statutorily prescribed review.

{38} Unable to effectively and meaningfully review the Commission's dismissal of GRIP's formal appeal, we reverse the dismissal and remand for further administrative proceedings as are necessary to adjudicate the issues surrounding GRIP's formal appeal. *Cf. Atlixco Coalition,* 1998–NMCA–134, ¶ 24, 125 N.M. 786, 965 P.2d 370 (holding that administrative action standard of review required agency to provide a "rational connection between the facts found and the choices made"). We hold that the Commission was required to provide reasoned bases for its conclusions. It did not do so. This Court will not attempt to "supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* ¶ 20 (internal quotation marks and citation omitted).

## 2. The Sanction of Dismissal

{39} Except for dismissal for untimeliness and for violation of discovery orders in extreme cases, the Commission regulations do not provide for dismissal of a formal appeal petition under the circumstances in this case. *See* 20.1.3.200(A)(3)(d) NMAC; 20.1.3.400(D)(5)(d) NMAC. The regulations do provide, however, that absent "a specific

provision ... governing an action, the Commission may look to the New Mexico Rules of Civil Procedure ... for guidance." 20.1.3.106 NMAC. The Commission did not refer to the Rules of Civil Procedure. GRIP and the Department request us to apply Rule 1–041(B) NMRA, which provides for dismissal for failure of a plaintiff to comply with the Rules of Civil Procedure and for the dismissal to act as an adjudication on the merits.

■ {40} It appears reasonable to use Rule 1–041(B) and cases decided under that rule as guidelines. A Rule 1–041(B) dismissal with prejudice, being a drastic sanction, "should be used sparingly." *Lowery v. Atterbury*, 113 N.M. 71, 74, 823 P.2d 313, 316 (1992); *accord Newsome v. Farer*, 103 N.M. 415, 420–21, 708 P.2d 327, 332–33 (1985); *see also Healthsource, Inc. v. X–Ray Assocs. of N.M., P.C.*, 2005–NMCA–097, ¶ 15, 138 N.M. 70, 116 P.3d 861 (holding against dismissal of an appeal where the "sort of technicality" advanced for dismissal based on lack of jurisdiction was one "that should not result in a dismissal"); *Lujan v. City of Albuquerque*, 2003–NMCA–104, ¶¶ 12–13, 134 N.M. 207, 75 P.3d 423 (requiring a district court to set forth in the record an explanation of the reasons and justification for the sanction of dismissal with prejudice for failure of a party to respond to a motion for summary judgment, and holding that, absent such an explanation, the sanction of dismissal with prejudice was too severe). "Dismissals under Rule 41(B) are limited to instances where the plaintiff's conduct warranting dismissal is extreme." *Lowery*, 113 N.M. at 74, 823 P.2d at 316; *see Newsome*, 103 N.M. at 420–21, 708 P.2d at 332–33 (stating that "[a] party's simple negligence or other action grounded in a misunderstanding of a court order does not warrant dismissal" and holding that a wilful violation of a court order warranted dismissal (internal quotation marks and citation omitted)). "[T]he trial court must consider lesser sanctions prior to dismissal." *Lowery*, 113 N.M. at 74, 823 P.2d at 316.

■ {41} In the present case, there exists no evidence of wrongful or wilful conduct on the part of GRIP in presenting a stipulated motion without the concurrence of Chino, in failing to serve Chino with a copy of the stipulated motion, or in failing to obtain Chino's approval of the order. It is noteworthy that Chino had notice of the informal appeal petition and the deadlines, and was in a position to check on the existence of either a request by GRIP for an extension or the filing or not of a formal appeal petition by GRIP. We determine that the dismissal was arbitrary because it was too extreme a sanction under the circumstances.

### 3. The One Commissioner's Vote Issue

■ {42} Although Chino and the Commission strongly argue to the contrary, one commissioner appears to have based his vote for dismissal on factors outside of the testimony and evidence before the Commission. The commissioner explained his vote, stating that "I'm basing my vote upon what I heard the other days in [the Tyrone mine] hearings. But I'm not going to discuss those with the Commission." It also appears that the commissioner was referring to a hearing before the Commission in October and November 2002 on the closure of another a mine, involving Chino, called the Tyrone mine. The commissioner's explanation at the time of his vote was given notwithstanding that the commissioner had been counseled by the Commission's attorney to keep the Tyrone mine matter separate from the mine at issue. It may be unclear and there appears to be room for disagreement on whether the commissioner clearly based his vote on matters outside the record before him. However, what is clear is that with a six to five vote of the Commission for dismissal that rested solely on the weighing of prejudice to the parties, this commissioner's explanation for his vote for dismissal creates a serious enough concern about the validity of the outcome of the vote to add support to our view that the Commission's dismissal was arbitrary and an abuse of discretion.

### 4. The Timeliness Issue

■ {43} Contrary to Chino's contention, GRIP's petition for formal appeal cannot, under the circumstances, be considered untimely and therefore subject to dismissal under 20.1.3.200(A)(3)(d) NMAC. The Commis-

sion did not dismiss on that ground. *See Atlixco Coalition,* 1998–NMCA–134, ¶¶ 20–21, 125 N.M. 786, 965 P.2d 370; *see also Motor Vehicle Mfr. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) ("[W]e may not supply a reasoned basis for the agency's action that the agency itself has not given." (internal quotation marks and citation omitted)); *Harberson v. Nat'l Labor Relations Bd.,* 810 F.2d 977, 984 (10th Cir.1987) (stating, where a board's previously articulated standard was subject to an opposite interpretation, "[w]e cannot supply an interpretation . . . to uphold the Board when the Board has not provided that interpretation"). Further, granting the extension was an authorized act of the Commission, having been signed by the Secretary acting on behalf of the Commission. Moreover, the Secretary must be charged with knowledge of the Commission's adjudicatory regulations. Having granted an extension under the Commission regulations that were at the time unclear, it would have been patently arbitrary for the Commission to turn around and dismiss the formal appeal as being untimely.

## CONCLUSION

{44} For the reasons set out in this opinion, we reverse the Commission's dismissal of GRIP's formal appeal of Chino's closure permit and remand for further proceedings consistent with this opinion.

{45} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and RODERICK T. KENNEDY, Judges.