This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36039**

**RIO HONDO LAND AND CATTLE CO.,
LP and WILDEARTH GUARDIANS,**

Petitioners-Appellants,

v.

**NEW MEXICO WATER QUALITY
CONTROL COMMISSION,**

Respondent-Appellee,

and

**NEW MEXICO ENVIRONMENT
DEPARTMENT,**

Intervenor-Appellee.

**APPEAL FROM THE WATER QUALITY CONTROL COMMISSION
Larry Dominguez, Administrative Hearings Officer**

Steven Sugarman
Cerrillos, NM

for Appellants

Hector H. Balderas, Attorney General
Stephen A. Vigil, Assistant Attorney General
John Grubesic, Assistant Attorney General
Santa Fe, NM

for Respondent-Appellee

New Mexico Environment Department
John Verheul, Special Assistant Attorney General, Assistant General Counsel
Albuquerque, NM

for Intervenor-Appellee

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Petitioners appeal the New Mexico Water Quality Control Commission's (WQCC) November 15, 2016, order adopting the Total Maximum Daily Load (2016 TMDL) for a segment of the Rio Ruidoso. We affirm, holding that this Court has subject matter jurisdiction to consider Petitioners' appeal and that the WQCC's adoption of the 2016 TMDL was not legally erroneous.

## BACKGROUND

**{2}** A TMDL is a document that includes, in part, calculations of the maximum amount of pollutants that a water body can receive while maintaining state water quality standards. 33 U.S.C. § 1313(d)(1)(C) (2019); 40 C.F.R. § 130.7 (2019). "Standards" consist of waters' designated uses and "the water quality criteria necessary to protect" those uses. 20.6.4.6(A) NMAC. The New Mexico Environment Department (the Department) prepares TMDLs for waters that fail to meet the Department's water quality criteria. *See* 33 U.S.C. § 1313(d)(1)(C) (requiring states to develop TMDLs); 20.6.4.8(B)(3) NMAC (requiring the Department to assess "the probable impact of the effluent on the receiving water relative to its attainable or designated uses and numeric and narrative criteria"). The Department submits TMDLs for approval by the WQCC and the United States Environmental Protection Agency (EPA). *See* 33 U.S.C. § 1313(d)(2) (stating that the EPA must approve states' TMDLs); NMSA 1978, § 74-6-3(E) (2007) (stating that the WQCC "is the state water pollution control agency for this state for all purposes of the federal act"); *see also* 20.6.4.8(B) NMAC (providing that the Department implements water quality standards "under authority delegated by the [WQCC]"). Once approved, the TMDL becomes part of the state's water quality management plan, with which all permits to discharge pollutants must comply. 40 C.F.R. § 130.6(c)(1) (2019) (listing TMDLs as an "element" of Water Quality Management plans); 40 C.F.R. § 130.12(a) (2019) (providing that "no [point source discharge] permit may be issued which is in conflict with an approved Water Quality Management (WQM) plan").

**{3}** After a hearing, the WQCC approved the 2016 TMDL. Petitioners contend that the WQCC's approval of the 2016 TMDL was legally erroneous, arguing the Department used an incorrect calculation to determine the TMDL limit for total nitrogen. They assert that the Department's use of the annual median flow, rather than the critical low flow, to calculate total nitrogen is contrary to 20.6.4.11(B) NMAC. The Department argues that

this Court does not have subject matter jurisdiction, but if we do, 20.6.4.11(B) NMAC does not govern the calculation of the total nitrogen limit here.

## DISCUSSION

### Subject Matter Jurisdiction

**{4}** The Water Quality Act provides a right of appeal to "a person who is adversely affected by a regulation adopted by the [WQCC] or by a compliance order approved by the [WQCC] or who participated in a permitting action or appeal of a certification before the [WQCC] and who is adversely affected by such action." NMSA 1978, § 74-6-7(A) (1993). The parties dispute whether the 2016 TMDL is a regulation for purposes of Section 74-6-7(A). Applying relevant statutory and regulatory definitions of "rule" and "regulation," we conclude that the TMDL is a regulation within the meaning of Section 74-6-7(A).

**{5}** The WQCC administrative code in effect at the time of the hearing defines "regulations" as "any rules or standards promulgated by the [WQCC] to implement the [Water Quality Act]." 20.1.3.7(A)(18) NMAC. Similarly, the State Rules Act, NMSA 1978, § 14-4-2(C) (1969, amended 2017), defined "rule" to mean

> any rule, regulation, order, standard, [or] statement of policy . . . issued or promulgated by any agency and purporting . . . to affect persons not members or employees of such issuing agency. An order or decision or other document issued or promulgated in connection with the disposition of any case or agency decision upon a particular matter as applied to a specific set of facts shall not be deemed such a rule nor shall it constitute specific adoption thereof by the agency.[1]

Our Supreme Court, reviewing a similar jurisdictional challenge, applied the State Rules Act definition of "rule" to determine whether a WQCC action is a "regulation" and thus appealable under Section 74-6-7. *See Bokum Res. Corp. v. N.M. Water Quality Control Comm'n*, 1979-NMSC-090, ¶ 42, 93 N.M. 546, 603 P.2d 285 (holding that standards for evaluating waste water adopted by the WQCC are "rules" under the State Rules Act and are appealable to the Court of Appeals); *see also New Energy Econ., Inc. v. Vanzi*, 2012-NMSC-005, ¶ 2 n.1, 274 P.3d 53 (noting that the terms "rule" and "regulation" are used interchangeably).[2] These definitions inform our review, and we conclude the 2016

---

1The State Rules Act definition of "rule" was amended in 2017 and now also encompasses standards that "explicitly or implicitly implement or interpret a federal or state legal mandate or other applicable law." Section 14-4-2(F) (2017).

2We also note that since this matter arose, the WQCC adopted, within its rulemaking procedures, a definition of "regulation" that is substantially similar to the State Rules Act definition of "rule." 20.1.6.7(R) NMAC (" 'Regulation' means any rule, regulation or standard promulgated by the [WQCC] and affecting one or more persons, besides the [WQCC] and the [D]epartment, except for any order or decision issued in connection with the disposition of any case involving a particular matter as applied to a specific set of facts.").

TMDL may properly be considered a regulation under both the applicable administrative code and statute.

**{6}** First, the TMDL implements the Water Quality Act. The WQCC has a statutory duty under the Water Quality Act to adopt a comprehensive water quality management program, water quality standards, and regulations to prevent or abate pollution. NMSA 1978, § 74-6-4(B)-(E) (2009, amended 2019). New Mexico's water quality plan is required to include a TMDL, which "defines the amount of a pollutant that a waterbody can assimilate without exceeding the state's water quality standard for that waterbody and allocates loads to know point sources and nonpoint sources." *See* 40 C.F.R. § 130.6(c)(1); *see also* 33 U.S.C. § 1313(d)(1)(C) (mandating that each state "shall establish . . . the total maximum daily load, for those pollutants which the [EPA] Administrator identifies . . . as suitable for such calculation"). The TMDL's character in implementing the Water Quality Act thus falls within the definition of "regulation" articulated in the administrative code at 20.1.3.7(A)(18) NMAC.

**{7}** Second, the TMDL affects persons and entities who are regulated by the WQCC and the Department. The WQCC controls permits for the discharge of water contaminants and may not issue a permit that conflicts with an approved water quality management plan. NMSA 1978, § 74-6-5(E)(1) (2009) (stating that a permit for the discharge of any water contaminant shall be denied if "the effluent would not meet applicable state or federal regulations, standards of performance, or limitations"); 20.6.2.2001 NMAC (discussing procedures for pollution discharge permits to ensure that "permitted activities will be conducted in a manner that will comply with applicable water quality standards"); 40 C.F.R. § 130.12(a) (providing that the EPA may not issue permits in conflict with a state's water quality management plan). Because no permit may issue unless it is consistent with the maximum load for pollutants as calculated and set forth in a TMDL, the TMDL affects permit applicants who seek to discharge pollutants into a water body. *See* § 14-4-2(C) (1969, amended 2017) (defining "rule" as affecting persons not members or employees of the issuing agency); *see also Bokum Res. Corp.*, 1979-NMSC-090, ¶ 41 (noting that "an enactment by an agency designed to have the force and effect of law and to control the actions of persons who are being regulated by the agency is a 'rule' "). And because the 2016 TMDL in this case is not issued in connection with any particular permitting case, but broadly applies to anyone seeking to discharge nitrogen into the Rio Ruidoso, it can be viewed as a regulation setting the standard upon which particular cases are disposed. For these reasons, we conclude that the 2016 TMDL is a regulation and that the WQCC's adoption of the 2016 TMDL is appealable under Section 74-6-7.

**The WQCC Did Not Err in Concluding 20.6.4.11(B) NMAC Does Not Apply to Nitrogen**

**{8}** Turning now to the merits of this appeal, "[w]e engage in whole record review[,]" *Gila Res. Info. Project v. N.M. Water Quality Control Comm'n*, 2005-NMCA-139, ¶ 15, 138 N.M. 625, 124 P.3d 1164, and will set aside an action of the WQCC only if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence

in the record; or (3) otherwise not in accordance with law." Section 74-6-7(B). Petitioners argue that the 2016 TMDL is premised on an erroneous legal interpretation of 20.6.4.11(B) NMAC, and thus, that the WQCC's action was not in accordance with law. "A ruling that is not in accordance with law should be reversed if the agency unreasonably or unlawfully misinterprets or misapplies the law." *N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 11, 141 N.M. 41, 150 P.3d 991 (internal quotation marks and citation omitted). "[I]nterpretation of a regulation . . . is a matter of law that this Court reviews de novo[.]" *Counseling Ctr., Inc. v. N.M. Human Servs. Dep't*, 2018-NMCA-063, ¶ 22, 429 P.3d 326.

**{9}** The parties disagree over whether total nitrogen must be calculated using the "4Q3" minimum flow calculation pursuant to 20.6.4.11(B)(2) NMAC. The regulation states in relevant part:

> B. Critical low flow: The critical low flow of a stream at a particular site shall be used in developing point source discharge permit requirements *to meet numeric criteria set in 20.6.4.97 through 20.6.4.900 NMAC and Subsection F of 20.6.4.13 NMAC.*
>
> > (1) For human health-organism only criteria, the critical low flow is the harmonic mean flow[.] . . .
> >
> > (2) *For all other narrative and numeric criteria*, the critical low flow is the minimum average four consecutive day flow that occurs with a frequency of once in three years (4Q3).

20.6.4.11(B) NMAC (emphasis added). Petitioners argue that Subsection (B)(2) applies to nitrogen because it applies to *all* narrative and numeric criteria, except for human health-organism only criteria. The Department responds that Subsection (B) is limited in scope and applies only to "numeric criteria set in 20.6.4.97 through 20.6.4.900 NMAC and Subsection F of 20.6.4.13 NMAC"—which do not encompass nitrogen, a plant nutrient governed by 20.6.4.13(E) NMAC (stating that "[p]lant nutrients from other than natural causes shall not be present in concentrations that will produce undesirable aquatic life or result in a dominance of nuisance species in surface waters of the state"). We agree with the Department.

**{10}** 20.6.4.11(B) NMAC unambiguously defines the extent of its application, and nitrogen is not included within that purview. Petitioners do not point to any regulation identified within the scope of 20.6.4.11(B) NMAC—i.e., 20.6.4.97 to 20.6.4.900 NMAC or Subsection F of 20.6.4.13 NMAC—that may be read to include nitrogen. Instead, total nitrogen must be calculated using a narrative criteria to prevent "concentrations that will produce undesirable aquatic life or result in a dominance of nuisance species in surface waters of the state." 20.6.4.13(E) NMAC. The Department explained at the WQCC hearing that using the median flow to calculate total nitrogen was appropriate to accomplish this objective given the long-term growth cycle of algae, and because median flow conditions lead to the greatest algae growth. Petitioners do not challenge

this argument and have not asked us to consider whether substantial evidence supports the WQCC's conclusion that the TMDL satisfies the narrative criteria set forth in 20.6.4.13(E) NMAC using the annual median flow to calculate total nitrogen. For these reasons, we conclude that the WQCC did not err as a matter of law in approving the 2016 TMDL that calculated the daily nitrogen load based on annual median flow, and not the 4Q3 flow set forth in 20.6.4.11(B)(2) NMAC.

**{11}** Because Petitioners have not argued, nor have we concluded, that 20.6.4.11(B) NMAC is ambiguous, we do not reach Petitioners' argument that an "administrative gloss" requires a different interpretation. *See Baker v. Hedstrom*, 2012-NMCA-073, ¶ 38, 284 P.3d 400 ("[T]he canon of administrative gloss is applicable only where the provision giving rise to the dispute is ambiguous."), *aff'd on other grounds*, 2013-NMSC-043, 309 P.3d 1047.

**CONCLUSION**

**{12}** We affirm the WQCC's adoption of the 2016 TMDL.

**{13}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**