**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2009-NMCA-110

Filing Date: August 25, 2009

Docket No. 27,842

CHARLES KIRKPATRICK, JUNE KIRKPATRICK,
SUDYE KIRKPATRICK, and JAMES KIRKPATRICK,

      Appellants-Respondents,

v.

BOARD OF COUNTY COMMISSIONERS
OF SANTA FE COUNTY,

      Appellee-Petitioner,

and

MARK ALEXANDER, MARTHA ALEXANDER,
EDWARD STAINTON, and CHRISTINE STAINTON,

      Intervenors-Petitioners.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Daniel A. Sanchez, District Judge**

Karl H. Sommer & Associates, P.A.
Karl H. Sommer
Joseph M. Karnes
Santa Fe, NM

for Respondents

Stephen C. Ross, County Attorney
Sue A. Herrmann, Assistant County Attorney
Santa Fe, NM

for Petitioner

Rubin Katz Law Firm, P.C.

1

James B. Alley, Jr.
Frank T. Herdman
Santa Fe, NM

for Intervenors

**OPINION**

**VIGIL, Judge.**

**{1}** This case is before us on a writ of certiorari to review a decision of the district court that certain interspousal transfers of land fall within the Family Transfer provisions of the Santa Fe County Land Development Code (Code), Santa Fe County, N.M., Ordinance 1996-10 (1996), and are therefore exempt from subdivision requirements of the Code. We affirm.

**BACKGROUND**

**{2}** This case involves an eighty-acre tract of land[1] that is subject to the Code, a zoning ordinance adopted and enforced by the Board of County Commissioners of Santa Fe County (Board). The eighty-acre tract of land was originally owned by Teme, Ltd., a partnership, which consisted of the two Kirkpatrick brothers and their wives. In a transaction not in dispute here, the Board gave administrative approval to Teme, Ltd. to divide the eighty acres into four twenty-acre parcels. The partnership subsequently deeded to each brother, "a married man as his sole and separate property" two twenty-acre parcels. Each brother, "a married man as his sole and separate property" then deeded to his respective wife a twenty-acre parcel "as her sole and separate property." The result was that each of the four individuals (Landowners) owned a separate twenty-acre parcel as his or her sole and separate property.

**{3}** A Family Transfer application was then submitted on behalf of Landowners to the County Land Use Administrator to allow each Landowner to deed to his or her respective spouse one-half of each twenty-acre parcel, as "his [or her] sole and separate property." If approved, the result would be eight ten-acre lots, with each separately owned by a Landowner as his or her "sole and separate property." The application was submitted pursuant to Article II, Section 2.3.1 of the Code, a provision permitting what we herein refer to as a Family Transfer.

**{4}** County Land Use Planning staff confirmed that the application met all applicable

---

[1]The actual acreage of the tract of land is slightly larger than eighty acres. However, for convenience, we use the round figure of eighty acres. For the same reason, we refer to twenty-acre and ten-acre lots or parcels, which resulted from the division of the original eighty acres, although they are also slightly larger.

2

Code requirements for a Family Transfer and concluded that the resulting eight lots complied with all applicable development requirements of the Code, including water supply, fire protection, and adequate road access. The Land Use Administrator agreed with staff and approved the application. Each Landowner thereupon donated as a gift to his or her spouse one newly created ten-acre parcel. Landowners made the foregoing transactions in order to transfer portions of their property to their children and grandchildren and avoid triggering gift tax liability.

**{5}** Neighbors of Landowners (Intervenors) appealed to the County Development Review Committee (CDRC), contending that the transfer did not satisfy the intent and purpose of a Family Transfer. Staff recommended denying the appeal on grounds that the transfer complied with Code requirements, and the appeal was denied.

**{6}** Intervenors then appealed to the Board on the same grounds they appealed to the CDRC. Staff again recommended denial of the appeal. Counsel for Intervenors conceded that the transaction literally complied with the Code definition of a Family Transfer, but argued that the intent and purpose of a Family Transfer was not satisfied because the transfer was not intergenerational (i.e., from one generation to another) and that "viewing the transaction as a whole," the eighty-acre tract was subdivided without compliance with subdivision regulations into eight lots from four, because after all the transactions were completed, Landowners still owned the eighty acres. Counsel for Intervenors argued that the Family Transfer provision was included in the Code to recognize a Hispanic cultural tradition of parents giving portions of the family homestead to their children without having to go through the subdivision process.

**{7}** In a split decision, the Board overturned the decision of the Land Use Administrator and denied the application for a Family Transfer. Pertinent to this appeal, in its written order, the Board found that the intent of the Family Transfer provision was not to avoid tax consequences but rather to "maintain local cultural values by perpetuating and protecting a traditional method of land transfer within families, especially within the traditional communities." The Board also found that upon the grant of a Family Transfer "a new member of the applicant's family should secure an ownership interest in land not previously owned by that family member." Finally, the Board found that the "proposed division and distribution of land is more like a subdivision than a family land transfer and must comply with all subdivision review procedures and requirements."

**{8}** Landowners appealed the Board decision to the district court on the grounds that the Board had acted in an arbitrary, capricious, or illegal manner by: (1) denying Landowners' application although they complied with all Code requirements, and (2) treating Landowners differently by denying their application while approving other similar applications. Intervenors filed a motion to intervene, which was granted. Following oral argument, the district court determined that Section 2.3.1 of the Code is applicable to the Landowners' application, and it does not contain a statement of purpose or intent requirement regarding family transfers or a requirement that a new family member secure an ownership interest

upon a family transfer. The district court further concluded that the Landowners' application satisfied all applicable Code requirements for a Family Transfer and remanded the case to the Board to vacate its decision on the basis that the Board decision was improper and not in accordance with the Code.

{9}    Intervenors filed a petition for a writ of certiorari to review the district court decision in this Court in which the Board joined. We granted the petition.

## DISCUSSION

### Standard of Review

{10}    On a writ of certiorari, we employ an administrative standard of review when determining whether a district court, sitting as an appellate court, erred in its review of an administrative decision. *See Gallup Westside Dev., LLC v. City of Gallup*, 2004-NMCA-010, ¶ 10, 135 N.M. 30, 84 P.3d 78. That is, we review the Board decision to determine if the administrative decision is arbitrary, capricious, or an abuse of discretion; not supported by substantial evidence in the record; or otherwise not in accordance with the law, in the same way the district court did in its appellate capacity. *Id.*; *see* NMSA 1978, § 39-3-1.1(D) (1999); Rule 1-074(Q) NMRA.

{11}    Interpretation of an ordinance is a matter of law subject to our de novo review using the same rules of construction applicable to statutes. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 4, 126 N.M. 413, 970 P.2d 599. We follow three rules of statutory construction:

> The first rule is that the plain language of a statute is the primary indicator of legislative intent. Courts are to give the words used in the statute their ordinary meaning unless the legislature indicates a different intent. The court will not read into a statute or ordinance language which is not there, particularly if it makes sense as written. The second rule is to give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them. The third rule dictates that where several sections of a statute are involved, they must be read together so that all parts are given effect.

*Id.* ¶ 5 (internal quotation marks and citations omitted).

### Code Requirement for a Family Transfer

{12}    One transfer that the Code exempts from its subdivision regulations is a Family Transfer, which is described in the following language in Section 2.3.1a(ii)(h) of the Code:

> The division of land to create a parcel that is sold or donated as a gift to an

4

immediate family member (as defined in Article X); however, this exception shall be limited to allow the seller or donor to sell or give no more than one parcel per tract of land per immediate family member. Divisions made under this exception will be referred to throughout the Code as Family Transfers[.]

Article X, Section 1.66 of the Code defines the phrase "Immediate Family Member" to include a "husband, wife, father, stepfather, mother, stepmother, brother, stepbrother, sister, stepsister, son, stepson, daughter, stepdaughter, grandson, stepgrandson, granddaughter, stepgranddaughter, nephew and niece."[2]  We agree with Landowners that Section 2.3.1 is clear and unambiguous. A Family Transfer application must (1) create a parcel that is sold or donated, (2) to an "immediate family member," and (3) a seller or donor can give no more than one parcel per "immediate family member." No other requirements are necessary. Specifically, the Family Transfer provision has no "intent" or "purpose" requirements. If the requirements are satisfied, the application must be granted.

**{13}**    In this case, (1) each Landowner applied to donate a parcel from a tract of land he or she owns to a spouse, (2) each husband and wife is an "immediate family member", and (3) each Landowner proposed to donate no more that one parcel per tract of land to his or her spouse. Under the plain, unambiguous terms of the Code, each transaction constituted a permissible Family Transfer. As such, no subdivision regulations of the Code were applicable. Unless otherwise justified, the Board failed to act in compliance with its own Code in ordering that the applications be denied, and the district court correctly reversed the Board decision. We therefore address whether the action of the Board was otherwise proper.

**Intended Purpose Requirement**

**{14}**    The Board states, "The sole question before this Court is whether the [Board] acted in accordance with law when it found that the transfers at issue did not meet the intended purpose of the County's [F]amily [T]ransfer ordinance." Intervenors also argue that the transfers violated the "obvious purpose" of the Family Transfer ordinance. Both argue that the "Purposes" section of Article II, Section 4.3.1 of the Code applies to this case, even though the applications were filed for approval pursuant to Section 2.3.1 and not Section

---

[2]Although not before us in this case, the parties advise us that the New Mexico Subdivision Act contains similar provisions in almost identical language. Specifically exempted from the definition of a subdivision is "the division of land to create a parcel that is sold or donated as a gift to an immediate family member;  however, this exception shall be limited to allow the seller or donor to sell or give no more than one parcel per tract of land per immediate family member." NMSA 1978, § 47-6-2(L)(9) (2005) (amended 2005). The Act defines "immediate family member" to mean "a husband, wife, father, stepfather, mother, stepmother, brother, stepbrother, sister, stepsister, son, stepson, daughter, stepdaughter, grandson, stepgrandson, granddaughter, stepgranddaughter, nephew and niece, whether related by natural birth or adoption." Section 47-6-2(D).

4.3.1.  We disagree.

**{15}** Section 4.3 is entitled "Small Lot Inheritance and Small Lot Family Transfer." This section permits the creation of a lot from an existing family lot by inheritance or family transfer, which does not satisfy Code lot-size requirements.  Section 4.3.1 states that the "Purposes" of this section are:

> 4.3.1a.    To maintain local cultural values by perpetuating and protecting a traditional method of land transfer within families, especially within the traditional communities; and
>
> 4.3.1b    To permit transfers of lots which do not meet the lot size requirements of the Code from grandparents, parents or legal guardians as a one time gift to a child or grandchild in order to provide a more affordable home site for these adult children.

**{16}** The Board asserts that the Code provides for two categories of family transfers: transfers where there is sufficient property to meet minimum lot-size requirements; and transfers where there is not sufficient property to meet minimum lot-size requirements. However, the Board asserts, in both circumstances, the nature and purpose of a family transfer remains the same.  Since all family transfers are divisions of land to create a parcel that is sold or donated as a gift to a family member and all such transfers are exempt from subdivision requirements, the Board argues that the purposes set forth in Section 4.3.1 must apply to all family transfers.

**{17}** The Board argues that the purposes set forth in Section 4.3.1 are violated because the transfers are being used as a mechanism for avoiding gift taxes and result in the land remaining under the ownership of Landowners.  Furthermore, the Board asserts that there was "no indication that any [Landowner] family member ever would live there," although it acknowledges that there was evidence that one child had started a home.  Finally, the Board points out, the deeds among Landowners were executed after Landowners applied for the Family Transfer, and the deeds were not recorded.  The Board concludes, "This series of transactions demonstrates that the proposed transfer was more like a subdivision than a family transfer."  Intervenors contend the transactions violate the Section 4.3.1 purposes because, "Nowhere does the definition of 'family transfer' or any statutory language in the Code about the purpose of a family transfer suggest that the trading of lots between spouses who already own the land traded constitutes a valid 'family transfer' under the Code."

**{18}** The Board argues that we should defer to its interpretation of the Code in this case because it authored the family transfer provisions in Sections 2.3.1 and 4.3.1 of the Code, and their interpretation involves special agency expertise.  *See High Ridge Hinkle Joint Venture*, 1998-NMSC-050, ¶ 5 (stating that the second rule for construing a statute or ordinance is to "give persuasive weight to long-standing administrative constructions of

6

statutes by the agency charged with administering them") (internal quotation marks and citation omitted); *Alba v. Peoples Energy Res. Corp.*, 2004-NMCA-084, ¶ 22, 136 N.M. 79, 94 P.3d 822 (stating that even if an agency's interpretation of its ordinance is not long-standing, a court may still give some deference to the agency's interpretation).  We decline to do so because we conclude that the Board's interpretation is unreasonable and unlawful. *See id.* ¶ 23 (stating that we will adopt the agency's interpretation of its ordinance where it is not unreasonable or unlawful).

**{19}**    The Board and Intervenors overlook the fact that Landowners applied under Section 2.3.1 of the Code, which is completely apart from Section 4.3.  Section 4.3.1 refers to an entirely different type of family transfer with different requirements than a Family Transfer under Section 2.3.1.  Transfers under 2.3.1 fall under the category "where there is sufficient property to meet density requirements, i.e., minimum lot sizes."  The minimum lot size in this Mountain Hydrologic Zone can be as small as 2.5 acres per dwelling as long as water is available.  Here, Landowners' geo-hydrology report with their application was reviewed by the County's hydrologist, who concluded that the existing well on the property could support eight ten-acre lots.  Thus, the transfer fell under Section 2.3, and not under Section 4.3 for small-lot family transfers.  For the special purposes stated, Section 4.3 allows family transfers that will result in the creation of lots that do not satisfy Code lot-size requirements. In addition, Section 4.3 contains several prerequisites for such transfers that are simply not required for a Section 2.3.1 Family Transfer:  (1) the lot must be created by intergenerational gift (i.e., to a child or grandchild); (2) the applicant must submit proof that the land has been in the lawful possession of the family proper for no less than five years prior to the application; (3) the applicant must submit proof that the recipient is an adult or emancipated minor; (4) there must be a notation on the plat that the lot was created per the small-lot family transfer section of the Code; (5) there must be a notice mailed to all persons within 100 feet; and (6) there must be an affidavit that the person transferring the property has not transferred any other lots to the recipient.

**{20}**    Furthermore, Section 2.3.1 makes no reference to the requirements of Section 4.3. Any applicant seeking to transfer land to an "immediate family member" via Section 2.3.1 would be entirely unaware that he or she needed to comply with the "Purposes" requirements of Section 4.3.1.  We do not defer to the Board's interpretation if it would lead to such an unreasonable result.  *See Aztec Well Servicing Co. v. Prop. & Cas. Ins. Guar. Ass'n*, 115 N.M. 475, 479, 853 P.2d 726, 730 (1993) ("Our interpretation of the statute must be consistent with legislative intent, and our construction must not render the statute's application absurd, unreasonable, or unjust.").

**{21}**    The Board and Intervenors attempt to bolster their argument that the "Purposes" in Section 4.3.1 apply to all family transfers by citing statements made by Intervenors' counsel at the Board hearing that counsel was on a committee with the person who "came up with the family transfer" in 1979, and that the motivation behind the creation of family transfers was to protect a Hispanic tradition of passing land on to children so that the children could live on the same land.  We assume, without deciding, that the Board could properly consider

7

counsel's statements as indicative of legislative intent. This description of the intent behind family transfers aligns with both Section 4.3's "Purposes" and Section 4.3's requirements. However, these purposes and requirements, by their terms, do not apply to a Section 2.3.1 Family Transfer because Section 2.3.1 is for lots that meet density requirements. Thus, we conclude that the legislative intent described by Intervenors' counsel does not apply to family transfers under Section 2.3.1.

**{22}** For the foregoing reasons we conclude that the district court correctly determined that the "Purposes" set forth in Section 4.3.1 were not a proper basis for the Board to deny Landowners' application for a Family Transfer under Section 2.3.1.

**No Previous Ownership Requirement**

**{23}** Intervenors argue that the plain meanings of the words "sold" and "donated" in Section 2.3.1 require that something be transferred "from one person to another." Consistent with this argument, the Board found that in a Family Transfer, a family member should gain an ownership interest in land that he or she did not previously own. However, the proposed family transfers between the spouses effectively transferred an interest from "one person to another." Furthermore, in the deeds executed to effect the proposed family transfers, each Landowner divided an individual twenty-acre lot to create a new ten-acre lot that did not exist prior to the division. Upon approval of the application, the grantee would receive an ownership interest in a lot that did not previously exist. Therefore, each Landowner would receive something that he or she did not already own, because the transferred interest did not exist prior to the division.

**{24}** We therefore conclude that Section 2.3.1 was not violated by the transaction set forth in Landowners' application for a Family Transfer.

**Equal Protection**

**{25}** Because we affirm the district court order on the above grounds, we do not reach the issue of whether Landowners were denied equal protection of the law when the Board denied their application.

**CONCLUSION**

**{26}** The decision of the district court is affirmed.

**{27}** **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

8

**JONATHAN B. SUTIN, Judge**

_____

**CELIA FOY CASTILLO, Judge**

**Topic Index for** _Kirkpatrick v. Bd. of County Commissioners of Santa Fe County_, **No. 27,842**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-AA | Administrative Appeal |
| AL-AC | Arbitrary and Capricious Actions |
| AL-JR | Judicial Review |
| AL-LI | Legislative Intent |
| | |
| **GV** | **GOVERNMENT** |
| GV-CU | Counties |
| GV-LU | Land Use |
| GV-SU | Subdivisions |
| GV-ZL | Zoning Law |
| | |
| **PR** | **PROPERTY** |
| PR-CY | Conveyances |
| PR-GF | Gifts |
| PR-SU | Subdivisions |