# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2023-NMCA-059

Filing Date: June 7, 2023

No. A-1-CA-39539

BISHNU RAUTH, M.D.,

      Appellant-Petitioner,

v.

NEW MEXICO MEDICAL BOARD,

      Appellee-Respondent.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Maria Sanchez-Gagne, District Court Judge**

Barnhouse Keegan Solimon & West LLP
Michelle T. Miano
Randolph H. Barnhouse
Los Ranchos de Albuquerque, NM

for Petitioner

Margaret McLean, Special Counsel
Santa Fe, NM

for Respondent

## OPINION

**HANISEE, Judge.**

**{1}**    Petitioner Bishnu Rauth appeals the district court's affirmance of underlying administrative decisions by Respondent New Mexico Medical Board (the Board), by which Rauth's license to practice medicine was revoked. Rauth raises a single issue on appeal: whether the district court erred in upholding the Board's denial of Rauth's request to exercise a peremptory excusal of a hearing officer under the Uniform Licensing Act (the ULA), NMSA 1978, § 61-1-7(C) (1993).[1] Section 61-1-7(C) provides

---

[1]Section 61-1-7(C) was amended during the January 2023 legislative session. *See* H.B. 384, 56th Leg., 1st Sess. (N.M. 2023), https://www.nmlegis.gov/Sessions/23%20Regular/final/HB0384.pdf. Such amendments,

in pertinent part that "[e]ach party may peremptorily excuse one board member or a hearing officer by filing with the board a notice of peremptory excusal at least twenty days prior to the date of the hearing." At issue in this case is a matter of first impression regarding the meaning of "the hearing" as written in Section 61-1-7(C). Concluding there to be no error below regarding the interpretation and application of Section 61-1-7(C), we affirm.

**BACKGROUND**

{2}     The underlying administrative proceedings were commenced following the Board's 2015 receipt of five patient complaints regarding Rauth. The complaints alleged that while practicing as an oncologist, Rauth failed to:

> provide patient treatment protocol within the standard of care[;] . . . adequately and appropriately diagnose, evaluate, monitor, and treat patients[;] . . . advise and address serious side effects and adverse reactions to chemotherapy[;] . . . maintain accurate, complete, current and timely medical records[;] . . . provide patient medical records to patients and/or another physician when requested to do so[;] . . . timely provide information to the Board when requested to do so.

The complaints further alleged that Rauth "failed or refused to communicate about patient care with patients and/or patients' family members in a timely or professional manner" and "interacted with patients in a rude, inappropriate, and unprofessional manner, including discouraging patients from seeking a second opinion."

{3}     On July 7, 2017, the Board initiated two disciplinary actions against Rauth, each based on the complaints filed against him: (1) a notice of summary suspension and (2) a notice of contemplated action. In the notice of summary suspension, which immediately and summarily suspended Rauth's license, the Board stated it "possesse[d] evidence indicating that" Rauth's continued practice of medicine posed "a clear and immediate danger to the public health and safety" and that "[s]uch evidence, if not rebutted at a later hearing, will justify the Board in imposing further suspension or revocation of [Rauth's] license." The notice of contemplated action stated that the Board had "before it sufficient evidence that, if not rebutted or explained, will justify the [Board] imposing sanctions that could include restricting, revoking or suspending" Rauth's license. The notices of summary suspension and contemplated action were assigned the same case number, 2017-027, and Rauth requested hearings as to each notice.

{4}     The initial such hearing on the notice of summary suspension (the summary suspension hearing) was held on August 24, 2017. There, the hearing officer heard from multiple sworn witnesses, each subject to cross-examination, and considered evidence and exhibits—including patient complaints, professional standard guidelines, and personal notes by Rauth—over approximately seven hours. Following the summary

---

scheduled to go into effect in July 2023 do not substantively affect Section 61-1-7(C), specifically, and we therefore refer to only the current version of the statute.

suspension hearing, the hearing officer issued proposed findings of fact and conclusions of law recommending suspension of Rauth's license. Thereafter, the Board issued its decision suspending Rauth's license. A second hearing was scheduled to be held in June 2018 on the notice of contemplated action (the contemplated action hearing) before the same hearing officer who presided over the summary suspension hearing. On April 12, 2018, Rauth filed an amended motion for change of hearing officer, in which he stated in pertinent part that he was electing to "exercise his right to a peremptory [excusal] of" the assigned hearing officer. The hearing officer filed an order denying Rauth's motion in part on the basis that the peremptory excusal was not timely, stating that "[a] peremptory [excusal] to this [h]earing [o]fficer is not available to" Rauth because Section 61-1-7(C) "provides for peremptory excusal at least twenty days prior to 'the date of the hearing,' not to the date of *each* hearing in a matter extending over a period of many months. Hearings have already been held in this matter. The time for peremptory excusal has long passed." (Emphasis added.) The Board affirmed the hearing officer's order denying Rauth's amended motion for change of hearing officer. The contemplated action hearing was held as scheduled, resulting in the hearing officer's report recommending that Rauth's license be revoked. Adopting the hearing officer's findings of fact and setting forth its own conclusions of law, the Board ultimately issued its decision and order revoking Rauth's license (the revocation order).

{5}     Rauth appealed the Board's revocation order in district court, pursuant to Rule 1-074 NMRA. *See* Rule 1-074 (outlining the procedure for appeal to the district court from an administrative agency). In its order on the Rule 1-074 appeal, the district court affirmed the Board's revocation order. Rauth filed a motion for rehearing with the district court, arguing specifically that the district court "overlooked or misapprehended" the relevant law regarding peremptory excusals of hearing officers, such that it was error to deny Rauth's attempt to exercise a peremptory excusal to remove the hearing officer in the administrative proceedings below. Following a hearing, the district court denied Rauth's motion for rehearing, stating in pertinent part that the issue of the peremptory excusal of the hearing officer had been addressed by the court and found to be "not timely." The district court's statements echoed the hearing officer's denial of Rauth's amended motion for change of hearing officer, in that such denial was premised in part on the hearing officer's conclusion that because Rauth sought a peremptory excusal prior to the contemplated action hearing—the *second* of the two relevant hearings in this case—rather than before the initial summary suspension hearing, he was not entitled to seek a peremptory excusal. Following the district court's denial of Rauth's motion for rehearing, Rauth filed with this Court a petition for writ of certiorari, which we granted. *See* Rule 12-505(A), (B) NMRA (governing "review by [this] Court . . . of decisions of the district court . . . from administrative appeals under Rule 1-074," and providing that "[a] party aggrieved by the final order of the district court [from such an administrative appeal] may seek review of the order by filing a petition for writ of certiorari with [this] Court . . . which may exercise its discretion whether to grant the review").

**DISCUSSION**

**{6}** Rauth raises the single question on appeal of whether the district court erred in upholding the denial of his right to peremptorily excuse a hearing officer. Specifically, Rauth argues that the denial of his right to exercise a peremptory excusal was erroneous under Section 61-1-7(C) and that such denial deprived him of his constitutional right of due process. The Board answers that the district court correctly upheld the denial of Rauth's request to peremptorily excuse the hearing officer. Specifically, the Board asserts the following: (1) it has the ability to interpret and apply statutes; (2) the summary suspension and contemplated action hearings were conducted as part of "the same administrative prosecution" that should be considered "one continuous process that may result in different outcomes," as evidenced by the fact that the proceedings arose from the same allegations and occurred under the same case number; (3) the interpretation of Section 61-1-7(C) set forth by Rauth would lead to absurd results; (4) policy concerns support the Board's interpretation of Section 61-1-7(C); and (5) Rauth's peremptory excusal was untimely because it was filed as part of his amended motion for change in hearing officer after the assigned hearing officer made discretionary rulings on Rauth's motions.

**{7}** "On a writ of certiorari, we employ an administrative standard of review when determining whether a district court, sitting as an appellate court, erred in its review of an administrative decision." *Kirkpatrick v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 2009-NMCA-110, ¶ 10, 147 N.M. 127, 217 P.3d 613. Resolution of the arguments raised in this appeal require interpretation of Section 61-1-7(C)—and, specifically, the meaning of "the hearing" as written in the statute. We therefore review this matter de novo. *See N.M. Corr. Dep't v. AFSCME Council 18*, 2018-NMCA-007, ¶ 9, 409 P.3d 983 ("We apply a de novo standard of review to administrative rulings regarding statutory construction." (alteration, internal quotation marks, and citation omitted)); *see also City of Albuquerque v. AFSCME Council 18 ex rel. Puccini*, 2011-NMCA-021, ¶ 8, 149 N.M. 379, 249 P.3d 510 ("When reviewing an administrative agency's conclusions of law, we review de novo."). While we do not defer to the conclusions of law by either the agency or the district court under this de novo review, we apply "the same standard of review [as] the district court," and review an administrative order "to determine if it is arbitrary, capricious, or an abuse of discretion; not supported by substantial evidence in the record; or, otherwise not in accordance with law." *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806.

**{8}** Under Section 61-1-7(C), a "party may peremptorily excuse one board member or a hearing officer by filing with the board a notice of peremptory excusal at least twenty days prior to the date of the hearing." *See also* 16.10.6.16(A) NMAC ("Excusal of a board member or hearing officer shall be in accordance with Section 61-1-7."). Here, the essential question centers on the proper interpretation and application of the statute's requirement that a notice of peremptory excusal must be filed twenty days prior to "the hearing." Specifically, we must determine whether such requirement applies to *each* hearing in the instant case—such that Rauth was permitted to file a notice of peremptory excusal twenty days prior to the contemplated action hearing—or, as the Board argues, whether Rauth was only permitted to file a notice for peremptory excusal twenty days prior to the summary suspension hearing, the first of the two relevant

proceedings joined in the underlying administrative case number. To resolve this question, we first look to the plain language of the statute.

{9}     "The guiding principle in statutory construction requires that we look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Elite Well Serv., LLC v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-041, ¶ 7, 531 P.3d 635  (internal quotation marks and citation omitted). "Plain language of a statute is the primary indicator of legislative intent," and "[w]e will not read into a statute language which is not there." *Id.* (alterations, internal quotation marks, and citations omitted). Further, we give "persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them." *Id.* ¶ 16 (internal quotation marks and citation omitted); *see also N.M. Depo v. N.M. Tax'n & Revenue Dep't*, 2021-NMCA-011, ¶ 10, 485 P.3d 773 (explaining that although we are "not bound by the hearing officer or agency's interpretation of the law," we may "give some deference to a hearing officer's reasonable interpretation and application of a statute").

{10}    We first observe that Section 61-1-7(C) is silent as to whether "the hearing" refers to *the first* in a series of hearings or *any* hearing in a series of hearings. The omission of such specificity neither supports nor undermines either parties' positions on appeal given that silence "is at best a tenuous guide to determining legislative intent." *Blue Canyon Well Ass'n v. Jevne*, 2018-NMCA-004, ¶ 17, 410 P.3d 251 (internal quotation marks and citation omitted). "The Legislature knows how to include language in a statute if it so desires." *Elite Well Serv.*, 2023-NMCA-041, ¶ 18 (internal quotation marks and citation omitted). We recognize that Section 61-1-7(C) was amended by the Legislature to eliminate language stating that the exercise of peremptory excusals in ULA proceedings should occur "as in the case of judges." *See Rex, Inc. v. Manufactured Hous. Comm. of N.M.*, 1995-NMSC-023, ¶ 34, 119 N.M. 500, 892 P.2d 947 (quoting the historic language). While such amendment indicates that the Legislature intended to distinguish—in some capacity—procedures for peremptory excusals under the ULA from peremptory excusals of judges, the exact nature of the intended distinction is unclear.

{11}    Indeed, the procedures by which a party may seek a peremptory excusal of a judge in district court are distinct from those procedures set forth in Section 61-1-7(C). For example, Rule 1-088.1(A) NMRA states that "[a] party may not excuse a judge after the party has attended a hearing or requested that judge to perform any act other than an order for free process or a determination of indigency." Further, the rule specifies procedures and limitations based on whether the party seeking a peremptory excusal is a plaintiff, a defendant, or a later-added party, and provides additional limitations on timeliness of filing the peremptory excusal. Rule 1-088.1(C). By contrast, in its current form, Section 61-1-7(C) provides in pertinent part that "[e]ach party may peremptorily excuse one board member or a hearing officer by filing with the board a notice of peremptory excusal at least twenty days prior to the date of the hearing." These numerous, though nonexhaustive, differences between peremptory excusal procedures

under the ULA and in district court render us unable to assume on which basis the Legislature intended to distinguish the respective procedures through its omission of the phrase "as in the case of judges"—a phrase that, we note, is not particularly specific in and of itself.

**{12}** To the extent that "the hearing," as written in Section 61-1-7(C) "could be considered ambiguous, . . . we must attempt to construe a statute according to its obvious spirit or reason," mindful of the slight deference we give a hearing officer's reasonable interpretation of statute. *Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 29, 146 N.M. 453, 212 P.3d 341 (internal quotation marks and citation omitted); *see N.M. Depo*, 2021-NMCA-011, ¶ 10. Here, a number of factual considerations aid our understanding of the spirit and reason of the statute as interpreted by the Board. First, we note that a prior disciplinary proceeding against Rauth was assigned a different case number, 2009-17, from the proceedings at issue here—which were both assigned case number 2017-027—indicating that the 2017 proceedings were intended to function sequentially and in tandem with one another rather than as separate and distinct proceedings. Second, we cannot ignore that the very nature of the actions described in the notices of summary suspension and contemplated action—delivered together on the same day—were inherently successive, in that the notice of summary suspension effectively placed Rauth on an *interim* suspension until "further [o]rder of the Board." After the original suspension hearing was vacated, Rauth received notices on the same day for both the reset suspension hearing and the hearing on the notice of contemplated action. The Board's order on the notice of contemplated action referenced the suspension and, unlike the suspension order, notified Rauth of the opportunity to appeal. These functional connections between the hearings on the two notices lends support to the Board's interpretation of the statute as intending for any peremptory excusals to be exercised prior to the first hearing, since the notices and hearings, *together*, constituted the disciplinary action against Rauth. Third, the notices of summary suspension and contemplated action arose from the same series of patient complaints, with each notice identically reiterating the factual basis of the allegations against Rauth. Together, these facts indicate that the hearings in this case were intended to function as connected, successive proceedings arising from the same alleged complaints and requiring sequential—rather than separate—resolution. In light of these facts and the plain language of the statute, we consider the Board's interpretation of Section 61-1-7(C) under the circumstances to be reasonable and representative of the obvious spirit and reason of the statute. *See N.M. Depo*, 2021-NMCA-011, ¶ 10; *Dewitt*, 2009-NMSC-032, ¶ 29.

**{13}** We further note that a contrary interpretation of Section 61-1-7(C) would lead to potentially absurd results, which we seek to avoid—especially under a plain language meaning of a statute. "Courts will not construe a statute in a manner that leads to an absurd result. This rule is most often invoked when applying the plain or literal meaning of the words of the statute leads to an absurd result, but it is equally if not more applicable as a ground for insisting on application of the words' plain meaning to *avoid* an absurdity." *Provisional Gov't of Santa Teresa v. Doña Ana Cnty. Bd. of Cnty. Comm'rs*, 2018-NMCA-070, ¶ 27, 429 P.3d 981 (citations omitted). Under Rauth's

proposed interpretation of Section 61-1-7(C), a hearing officer could hear the first of two proceedings arising from the same facts, make its findings and issue its order, only to then be peremptorily excused—the very proceeding itself interrupted during its substantive pendency—by the party for whom the order was unfavorable. Under this interpretation, a second hearing officer would then take over the second of the two joined proceedings and be charged with reviewing the same or substantially the same facts upon which the first hearing officer made its findings. As the Board points out, such an interpretation could result in excessive delays in proceedings as well as a strain on administrative resources. Moreover, administrative strain and delays aside, it simply does not make practical sense to allow a party to await a favorable or unfavorable ruling in the first of two joined proceedings in order to determine whether to exercise the party's right to peremptory excusal.

**{14}**    We therefore hold that the interpretation of Section 61-1-7(C) by the hearing officer, and subsequently by the district court, comport with our principles of statutory construction, and we discern no error in the orders filed by the hearing officer and the Board, as such are supported by substantial evidence in the record and in accordance with the law. Likewise, we do not discern any error in the district court's decision upholding the hearing officer's order and the Board's revocation of Rauth's license. As such, we decline to further address the Board's arguments regarding whether the discretionary rulings Rauth sought and received from the hearing officer precluded his ability to seek a peremptorily excusal. Similarly, based on our above holding in which we conclude there to be no error arising from the proceedings below, we decline to address—to the extent they are raised in his briefing—Defendant's arguments regarding any violation of this due process rights.

**CONCLUSION**

**{15}**    For the foregoing reasons, we affirm.

**{16}    IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**