The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: May 14, 2025

**No. A-1-CA-41197**

**ALTO COALITION FOR ENVIRONMENTAL PRESERVATION,**

　　　Appellant,

v.

**ROPER CONSTRUCTION, INC.,**

　　　Petitioner-Appellee

and

**NEW MEXICO ENVIRONMENTAL IMPROVEMENT BOARD,**

　　　Appellee,

and

**NEW MEXICO ENVIRONMENT DEPARTMENT,**

　　　Intervenor-Appellee.

**IN THE MATTER OF THE PETITION FOR HEARING ON AIR QUALITY PERMIT NO. 9295.**

**APPEAL FROM THE ENVIRONMENT IMPROVEMENT BOARD**
**Phoebe Suina, Board Chair**

Hinkle Shanor LLP
Thomas M. Hnasko
Timothy B. Rode
David A. Lynn
Santa Fe, NM

for Appellant

Montgomery & Andrews, P.A.
Louis W. Rose
Kari E. Olson
Shelly L. Dalrymple
Daniel B. Goldberg
Santa Fe, NM

for Appellee Roper Construction, Inc.

Raúl Torrez, Attorney General
Kristin E. Hovie, Assistant Attorney General
Santa Fe, NM

for Appellee New Mexico Environmental Improvement Board

Chris Vigil, Assistant General Counsel
Albuquerque, NM

for Intervenor New Mexico Environment Department

**OPINION**

**BACA, Judge.**

{1}     This is an appeal from the Environmental Improvement Board's (EIB) final order reversing the Deputy Secretary of the New Mexico Environment Department's (NMED) order denying Appellee Roper Construction, Inc.'s (Roper) Air Quality Construction Permit (Permit 9295) for construction and operation of a concrete batch plant. Appellant Alto Coalition for Environmental Preservation (Alto) contends that (1) the EIB's final order was arbitrary and capricious, an abuse of discretion, not based upon substantial evidence, and otherwise not in accordance with law; (2) the EIB failed to address other errors in Roper's emissions modeling, thereby preventing meaningful appellate review; (3) procedural irregularities during the EIB's proceedings on both Permit 9295 and Alto's stay request violated Alto's procedural due process rights; and (4) the EIB erred in concluding that it lacked jurisdiction to consider whether the Roper permit application's use of the AP-42 emissions factor for public paved roads reflected actual conditions at Roper's concrete batch plant. Because the parties submitted competing technical evidence to estimate emissions and EIB had jurisdiction to review whether the permit demonstrated compliance with all state and federal requirements and emissions standards, we reverse and remand to the EIB for reconsideration.

**BACKGROUND**

{2}      Roper applied to the NMED for Permit 9295, a minor source air quality construction permit.[1] Thereafter, the Air Quality Bureau (the AQB) conducted its administrative review to determine whether Roper's application contained the required components. *See* 20.2.72.207(A) NMAC. Finding all required components present, the AQB ruled Roper's application administratively complete.

{3}      Subsequently, the AQB began its technical review, which requires it to verify the applicant's emissions calculations and to determine whether the application meets applicable federal and state regulations and emission standards. During its technical review, AQB staff determined that Roper's application used the correct AP-42 emissions factor and formulas in calculating emissions for all sources. Citing federal sources, an AQB analyst testified that AP-42 emissions factors "are representative values that relate the quantity of a pollutant released to the ambient air with an activity associated with the release of that pollutant." *See* Environment

---

[1]"[T]he Air Quality Control Act defines a major source of ozone as one, which emits 250 [tons per year (tpy)] or more of pollutant—which means that minor sources of ozone emit less than 250 tpy of pollutants. Per our regulations, [the] NMED shall deny any application for a permit, whether it be for a minor or major source, if the construction, modification, or permit revision will cause or contribute to air contaminant levels in excess of any [National Ambient Air Quality Standard] unless the ambient air impact is offset by meeting the requirements of either 20.2.79 NMAC or 20.2.72.216 NMAC, whichever is applicable." *WildEarth Guardians v. N.M. Env't Improvement Bd.*, 2024-NMCA-021, ¶ 20, 542 P.3d 820 (emphasis omitted) (alteration, internal quotation marks, and citations omitted).

Protection Agency (EPA), *AP-42, Compilation of Air Emissions Factors from Stationary Sources, Introduction* at 1, (2024), https://www.epa.gov/system/files/documents/2024-01/introduction_2024.pdf. AQB staff also reviewed the modeling Roper submitted, and attested that Roper's application followed appropriate modeling practices. Upon completing its technical review, the AQB recommended that the NMED issue Permit 9295.

{4}     In light of robust public opposition to Permit 9295, the NMED held a public hearing to determine whether Roper's application complied with applicable air quality standards. Following that public hearing, the hearing officer issued his report recommending that Permit 9295 be denied. The NMED Deputy Secretary adopted the Hearing Officer's Report and entered a final order denying Permit 9295. Roper petitioned for an appeal before the EIB.

{5}     The NMED filed an answer to Roper's appeal petition. In its answer, the NMED in relevant part agreed with Roper that (1) Roper's air quality construction permit application complied with all applicable state and federal requirements for approval; (2) a person opposed to the relief sought in a petition cannot fulfill the burden of production by raising doubt that the permit should be granted, but instead must affirmatively demonstrate that the permit would violate state and/or federal regulations, or that using different inputs in the modeling would result in an exceedance of state or federal air quality standards; and (3) Roper's modeling used

an appropriate AP-42 emissions factor for haul roads based on Roper's maximum proposed usage. Following a three-day evidentiary hearing, the EIB convened to deliberate. During its deliberations, the EIB engaged in a lengthy discussion in which it evaluated the evidence and attempted to distinguish and apply the burdens of production and persuasion. Ultimately, the EIB reversed NMED's denial of Permit 9295 and in relevant part, determined that it lacked "jurisdiction over [Roper's] use of AP-42." Alto appeals.

**DISCUSSION**

{6}     One of the many issues before the EIB was the application of the AP-42 emissions factors, which the parties agree can be used to estimate emissions from various sources of air pollution. NMED and Roper maintain that Roper's use of the AP-42 emissions factor for public paved roads reflected actual conditions at Roper's concrete batch plant. Alto contends that Roper's use of the AP-42 emissions factor for public paved roads, instead of the AP-42 emissions factor for industrial haul-roads within concrete batch plants, resulted in an underestimation of emissions. Thus, the parties dispute which AP-42 emissions factor applied to accurately estimate emissions for the activity that Roper sought a permit to conduct.

{7}     In New Mexico, air quality construction permits are required for "[a]ny person constructing a stationary source which has a potential emission rate greater than 10 pounds per hour or 25 tpy of any regulated air contaminant for which there is a

[n]ational or New Mexico Ambient Air Quality Standard." 20.2.72.200(A)(1) NMAC; *see* NMSA 1978, § 74-2-7(A)(1) (2021). An applicant seeking an air quality construction permit must demonstrate compliance with all state and federal requirements and emission standards. 20.2.72.208 NMAC. At its heart, therefore, one of Alto's primary positions is that Roper's permit application does not demonstrate that the activity will comply with emissions standards because an improper AP-42 emissions factor was used to estimate emissions, and that the EIB improperly determined it had no jurisdiction to review which AP-42 factor was used to estimate emissions. For the reasons expressed below, we agree with Alto that the EIB has jurisdiction to review the propriety of the AP-42 factor used by a permit applicant to estimate emissions.

## I.   The EIB's Final Order is Arbitrary, Capricious, and Otherwise not in Accordance with Law

### A.   Standard of Review

{8}   On appeal, this Court may set aside a determination of the EIB only if it is found to be "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." NMSA 1978, § 74-2-9(C) (1992). "An agency action is arbitrary and capricious if it is unreasonable, if it provides no rational connection between the facts found and the choices made, or if it entirely omits consideration of important aspects or relevant factors of the issue at hand." *N.M. Mining Ass'n. v. N.M. Water Quality Control*

*Comm'n*, 2007-NMCA-010, ¶ 22, 141 N.M. 41, 150 P.3d 991. "A ruling that is not in accordance with law should be reversed if the agency unreasonably or unlawfully misinterprets or misapplies the law." *Id.* ¶ 11 (internal quotation marks and citation omitted).

**B.     The EIB's Jurisdiction**

{9}     Alto argues the EIB erred in concluding that it lacked jurisdiction to consider whether the AP-42 emissions factor for public paved roads reflected actual conditions at Roper's concrete batch plant. Because "[t]he question of jurisdiction compels an answer" and "when a jurisdictional claim is raised, the issue must be decided before a court can review the case," *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300 (internal quotation marks and citation omitted), we turn first to address this argument. "We determine de novo whether an agency has jurisdiction over the parties or the subject matter of a case." *Citizen Action v. Sandia Corp.*, 2008-NMCA-031, ¶ 12, 143 N.M. 620, 179 P.3d 1228.

{10}     NMED and Roper argue that "the AQB's discretionary use of the AP-42 [emissions] factors is internal [NMED] policy over which the EIB does not have jurisdiction." Specifically, NMED contends that Alto advocates "impermissible de facto rulemaking that strips Roper, the [NMED], and the people of New Mexico of due process rights to weigh in on the promulgation of new regulations that would impose new air quality standards." The NMED further contends that "[b]ecause the

6

EIB has not promulgated regulations regarding the use of AP-42 [emissions factors], and because the EIB does not have authority over internal [NMED] policy, the EIB cannot dictate which AP-42 emission factors the [NMED] accepts, provided that . . . issuing the permit will not cause or contribute to any exceedances." The NMED and Roper misapprehend Alto's argument on appeal.

{11} Alto does not contend that the EIB has jurisdiction to impose a universally applicable rule or requirement that all applicants must use a specific AP-42 emissions factor. Rather, Alto argues that the EIB has the authority to evaluate whether a construction permit will cause or contribute to air contaminant levels in excess of a national or state standard, and that the EIB cannot make such a determination without being able to consider whether the applicant used an AP-42 emissions factor that accurately estimates emission levels at the proposed facility. We agree.

{12} "Administrative bodies are the creatures of statutes. As such they have no common law or inherent powers and can act only as to those matters which are within the scope of the authority delegated to them." *Pub. Serv. Co. of N.M. v. N.M. Env't Improvement Bd.*, 1976-NMCA-039, ¶ 7, 89 N.M. 223, 549 P.2d 638. In other words, "[t]he subject matter jurisdiction of an administrative agency is defined by statute, and an agency is limited to exercising only the authority granted by statute." *Citizen Action*, 2008-NMCA-031, ¶ 12. Thus, in determining the issue of jurisdiction

in this instance, we must construe the Air Quality Control Act (the AQCA) and accompanying regulations. "We are not bound by an agency's interpretation of a statute, since it is a matter of law that is reviewed de novo." *N.M. Mining Ass'n*, 2007-NMCA-010, ¶ 11.

{13} When construing a statute, "[o]ur main goal is to give effect to the [L]egislature's intent." *Id.* ¶ 12. "[T]he plain language of a statute is the primary indicator of legislative intent" and we are to "give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted). "Agency rules are construed in the same manner as statutes." *N.M. Mining Ass'n*, 2007-NMCA-010, ¶ 12.

{14} Pursuant to Section 74-2-7(C)(1), the EIB may deny an application for a construction permit if it appears that the construction "(a) will not meet applicable standards, rules or requirements of the [AQCA] or the federal act; (b) will cause or contribute to air contaminant levels in excess of a national or state standard . . . ; or (c) will violate any other provision of the [AQCA] or the federal act." Nothing in the plain language of Section 74-2-7(C)(1)(b), or any other section of the AQCA or the applicable rules and regulations, limits what the EIB may consider in determining whether construction will cause or contribute to air contaminant levels in excess of

8

a national or state standard. Indeed, NMED acknowledges that EIB *can* consider the evidence of different emission factors to the extent that "there was a dispositive showing that exceedances of air quality standards would occur." NMED cites no authority for its inclusion of a "dispositive showing" requirement, and we adopt no such standard. "However, to the extent that the language could be considered ambiguous, we can consider principles of statutory construction that are employed with statutes that are unclear. In doing so, we must attempt to construe a statute according to its obvious spirit or reason." *Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 29, 146 N.M. 453, 212 P.3d 341 (internal quotation marks and citation omitted).

{15} As noted, the AQB expert, citing federal guidelines, testified that AP-42 emissions factors "facilitate estimation of emissions from various sources of air pollution." *See* EPA, AP-42, *Introduction* at 1. Where, as here, an applicant uses an AP-42 emissions factor to estimate its emissions, we hold that the EIB has jurisdiction to consider whether the applicant's use of that AP-42 emissions factor reflects that the proposed operation "will cause or contribute to air contaminant levels in excess of a national or state standard." *See* § 74-2-7(C)(1)(b). A contrary holding would, in effect, render the EIB unable to meaningfully review permitting decisions when parties present conflicting emissions estimates based on disputed calculations or factual assumptions. *See Dewitt*, 2009-NMSC-032, ¶ 31 ("In

9

effectuating the intent of the Legislature, we must avoid any interpretations that would lead to absurd or unreasonable results."). We conclude that the EIB erred in determining that it lacked jurisdiction to consider whether the choice of the AP-42 emissions factor to estimate emissions for the proposed permit would "cause or contribute to air contaminant levels in excess of a national or state standard." *See* § 74-2-7(C)(1)(b).

{16} Having concluded that the EIB erred in concluding that it lacked jurisdiction to consider whether the AP-42 emissions factor for public paved roads reflected actual conditions at Roper's concrete batch plant, we hold that the EIB's decision is arbitrary and capricious, and not in accordance with law. *See N.M. Mining Ass'n*, 2007-NMCA-010, ¶¶ 11, 22 (stating that "[a] ruling that is not in accordance with law should be reversed if the agency unreasonably or unlawfully misinterprets or misapplies the law" and that "[a]n agency action is arbitrary and capricious . . . if it provides no rational connection between the facts found and the choices made" (internal quotation marks and citation omitted)). Therefore, we need not reach many of Alto's remaining arguments on appeal. As we explain, however, we find it prudent to address two additional issues because we perceive that they are likely to arise again on remand.

## C. The Parties' Respective Evidentiary Burdens and the EIB's Order

{17} Alto also contends that the EIB misunderstood and misapplied the parties' respective evidentiary burdens and did not include sufficient factual findings in the final order. Alto submits that as a result, the EIB erroneously concluded that Alto failed to fulfill its burden of production and sided with Roper whenever there was conflicting evidence. "Nowhere was this more evident," Alto argues, "than with respect to Roper's use of the AP-42 emissions factor for 'public paved roads.'" Because we are remanding to the EIB, we endeavor to provide the EIB and the parties with clarity as to the parties' respective evidentiary burdens and the requirements for the final order. *See State v. Carrasco*, 1997-NMCA-123, ¶ 7, 124 N.M. 320, 950 P.2d 923 (addressing issues briefed by the parties that are likely to reoccur on remand "in the interest of judicial economy").

{18} "[T]he term 'burden of proof' has been used to describe two distinct concepts: (1) the burden of persuasion, i.e., the burden to persuade the fact[-]finder; and (2) the burden of production, i.e., the burden to produce evidence." *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 24, 304 P.3d 409. The burden of persuasion "never shifts from one party to the other, at any stage of the proceedings." *Duke City Lumber Co. v. N.M. Env't Improvement Bd.*, 1980-NMCA-160, ¶ 6, 95 N.M. 401, 622 P.2d 709 (internal quotation marks and citation omitted). The burden of production, on the other hand, "may shift back and forth between the parties as

the [proceeding] progresses." *Id.* (internal quotation marks and citation omitted). "It is said that although a [petitioner] always has the burden of persuasion, which never shifts, [they] may produce sufficient evidence that [their] opponent's failure to adduce contradictory proof either may lead to a decision for [petitioner], or must lead to such a ruling." *Id.*

{19} In an appeal before the EIB, "[t]he burden of proof shall be upon the petitioner." Section 74-2-7(K). "In a petition hearing, the petitioner has the burden of going forward with the evidence and of proving by a preponderance of the evidence the facts relied upon to justify the relief sought in the petition. Following the establishment of a prima facie case by the petitioner, any person opposed to the relief sought in the petition has the burden of going forward with any adverse evidence and showing why the relief should not be granted." 20.1.2.302 NMAC. Based on this language, all parties agree, as do we, that the burden of *production* shifted from Roper to Alto upon Roper's establishment of a prima facie case, and that the burden of *persuasion* remained with Roper. *See Duke City Lumber Co.*, 1980-NMCA-160, ¶ 6.

{20} Alto first submits that "the EIB [f]inal [o]rder does not address whether Roper established a prima facie case entitling it to an air quality permit." We disagree. The EIB concluded in relevant part that Roper's application "established that the construction of the [f]acility meets the applicable statutory and regulatory standards,

12

will not cause or contribute to air contaminant levels in excess of national or state standards . . . , and will not violate any other provision of the [AQCA]." *See* § 74-2-7(C). Therefore, the EIB expressly concluded that Roper established its prima facie case that the permit should issue.

{21}    However, Alto asserts, even if Roper established a prima facie case, the EIB erred because it misunderstood that it was the burden of *production*, and not the burden of *persuasion*, that shifted from Roper to Alto. Additionally, Alto contends, the EIB misunderstood what was required of Alto to fulfill the burden of production. Alto submits that contrary to the EIB's understanding, the burden of production does not require Alto to prove that Roper's permit application should not be granted. In other words, Alto contends that it need not "disprove the facts that would sustain the petition." Instead, Alto argues that to fulfill its burden of production it was only required to "raise doubt" as to the correctness of Roper's permit application.

{22}    In determining what was required of Alto to fulfill the burden of production, we look to our decision in *Gemini Las Colinas, LLC v. New Mexico Taxation & Revenue Department*, 2023-NMCA-039, 531 P.3d 622, a tax protest case. Because *Gemini Las Colinas, LLC* involves a substantially analogous burden-shifting scheme to that of the AQCA, we find it instructive as to whether Alto may fulfill the burden of production simply by raising doubt as to the correctness of Roper's permit

13

application, or whether it must present evidence showing that Roper's permit should not be granted.

{23}     In *Gemini Las Colinas, LLC*, we held that at the outset of a tax protest "a protesting taxpayer bears both the burden to produce evidence (in order to overcome the presumption of correctness) and the burden to ultimately prove its case by a preponderance of evidence." *Id.* ¶ 27. If a taxpayer successfully carries their burden to produce evidence, thereby rebutting the presumption of correctness applied to agency tax assessments, the burden of production shifts to the department—the party supporting the initial assessment. *Id.* ¶ 29. There, we held that to carry its burden of production,

> the department must put forth evidence to show the *correctness of its assessment*—that is, evidence sufficient to make the correctness of the department's assessment a question of fact. The imposition of this burden is sensible and pragmatic; it ensures that when the hearing officer decides the case on its merits and acts as a fact-finder, the hearing officer can consider the evidence presented by both parties. Likewise, the existence of this burden means that *the department cannot simply rely on the unreliability or incredibility of the taxpayer's evidence. Instead, the department must produce evidence to justify its assessment. If the department's evidence creates a question of fact about the correctness of the assessment, it has fulfilled its burden of production, and the case is ripe for the hearing officer to resolve factual disputes and decide the protest on the merits*. Ultimately, at the merits stage, the burden of persuasion remains on the taxpayer—the party who bore it at the outset. As a result, if the evidence is in equipoise, the hearing officer should deny the taxpayer's protest.

*Id.* (emphasis added).

14

{24} Following the guidance provided in *Gemini Las Colinas, LLC*, in this instance, we hold that once a petitioner has made a prima facie case, a person opposed to the relief sought in the petition cannot fulfill the burden of production simply by raising doubt as to the correctness of the petition. Rather, the person opposed to the relief sought must go forward with adverse evidence showing why the relief should not be granted. In the present context, Alto must produce evidence showing that the construction and operation of the facility "(a) will not meet applicable standards, rules or requirements of the [AQCA] or the federal act; (b) will cause or contribute to air contaminant levels in excess of a national or state standard . . . ; or (c) will violate any other provision of the [AQCA] or the federal act." *See* § 74-2-7(C). Contrary to Alto's argument, this holding does not constitute improper burden shifting. Instead, it ensures that if both parties fulfill their burdens of production, the case is ripe for the EIB to resolve factual disputes; the EIB can consider the evidence presented by both parties, and decide the case on its merits. And since, at the merits stage, the burden of *persuasion* remains on the petitioner, if the EIB finds the evidence is evenly balanced or in equipoise, the EIB should deny the petition.

{25} We pause to clarify that the EIB need not deny an applicant's permit application simply because it concludes that the person opposed to the relief sought has fulfilled their burden of production. The EIB, in resolving factual disputes, may

make credibility determinations about the evidence before it. *See Skowronski v. N.M. Pub. Educ. Dep't*, 2013-NMCA-034, ¶ 47, 298 P.3d 469 ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (internal quotation marks and citation omitted)). However, in such an instance, that the EIB's analysis ultimately results in relief for the petitioner does not mean that the person opposed to the relief sought did not fulfill their burden of production. *See Gemini Las Colinas, LLC*, 2023-NMCA-039, ¶ 29 ("If the department's evidence creates a question of fact about the correctness of the assessment, it has fulfilled its burden of production, and the case is ripe for the hearing officer to resolve factual disputes and decide the protest on the merits.").

{26} Next, we address the requirements for the EIB to produce a reviewable final order. Regulation 20.1.2.403(B)(1) of the New Mexico Administrative Code explicitly requires that the EIB's final order "contain findings of fact, conclusions of law, [and] *an order based on the findings and conclusions*." (Emphasis added.) This is important "because our review is of an administrative, rather than a judicial, decision, [and] we will take care not to inappropriately tread on the executive branch's functions by looking for a factual or legal basis to support an agency's decision that is not stated by the agency as the underlying reason for its decision." *Gila Res. Info. Project v. N.M. Water Quality Control Comm'n*, 2005-NMCA-139,

16

¶ 34, 138 N.M. 625, 124 P.3d 1164. "The Legislature has recognized that administrative agencies must provide written factual and legal bases for their decisions." *Id.* ¶ 37; *see, e.g.*, NMSA 1978, § 39-3-1.1(B)(1) (1999). "This recognition undoubtedly stems from not only the concepts of fairness and transparency in administrative proceedings, but also from the difficulty in our conducting effective and meaningful statutorily prescribed review." *Gila Res. Info. Project*, 2005-NMCA-139, ¶ 37; *see also Atlixco Coal. v. Maggiore*, 1998-NMCA-134, ¶ 19, 125 N.M. 786, 965 P.2d 370 ("[I]n a formal, adjudicatory proceeding the decision[ ]maker must rule on the material issues in dispute in a manner that is sufficient to permit meaningful appellate review."). Thus, on remand, EIB's order must include findings that explain why the evidence does or does not meet the burden of production to show that the permit should be granted or denied, *see* § 74-2-7(C), or if both parties meet the burden of production, how EIB evaluated the evidence presented and on what basis EIB made its decision for one party or the other. In order to appropriately cabin our review of administrative proceedings, this Court must be able to determine the basis for the EIB's decision, and to ascertain whether the EIB understood and applied the parties' respective evidentiary burdens as set forth in this opinion.

**CONCLUSION**

{27} We reverse the EIB's final order and remand this case with instructions that the EIB conclude that it has jurisdiction to consider whether the AP-42 emissions factor for public paved roads reflected actual conditions at Roper's concrete batch plant, apply the evidentiary burdens as set forth herein, and articulate the basis for its decision in its written final order in accordance with this opinion.

{28} **IT IS SO ORDERED.**

_____
**GERALD E. BACA, Judge**

**WE CONCUR:**

_____
**SHAMMARA H. HENDERSON, Judge**

_____
**KATHERINE A. WRAY, Judge**

18